SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
SYLVIA TORRES-GUILLÉN (No. 164835 )
Deputy Federal Public Defender
(E-mail: Sylvia_Torres-Guillen@fd.org )
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-2644
Facsimile (213) 894-0081

Attorneys for Defendant
CALVIN C. COLBERT, JR.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALVIN C. COLBERT, JR.,<br><br>　　　　　Defendant. | NO. CR 09-301-GW<br><br>REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br>Hearing Date: Nov. 23, 2009<br>Time: 8:00 a.m.<br>Place: Courtroom No. 10 |

　　　Defendant Calvin C. Colbert, Jr., by and through his counsel, Deputy Federal Public Defender Sylvia Torres-Guillén, hereby submits his Reply to the Government's Opposition to his Motion to Suppress Evidence.

　　　This reply is based on the attached Memorandum of Points and Authorities, the files and records in this case and any argument or evidence this Court may consider.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　SEAN K. KENNEDY
　　　　　　　　　　　　　　　　Federal Public Defender

DATED:  November 16, 2009

　　　　　　　　　　　　　　By_____/S/_____
　　　　　　　　　　　　　　　　SYLVIA TORRES-GUILLÉN
　　　　　　　　　　　　　　　　Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## ARGUMENT

A.   THERE WAS NO PROBABLE CAUSE TO SEARCH ROOM 220.

    1.   <u>Generally</u>

The government recognizes that for a search warrant to demonstrate probable cause, it **must** reveal a "**fair probability** that contraband or evidence of a crime **will** be found in a **particular** place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); and *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1564 (emphasis added). Furthermore, a search warrant can be upheld only if the judge had a "**substantial** basis for concluding that the affidavit in support of the warrant established probable cause." *United States v. Greadny,* 929 F.2d 523 (9th Cir. 1991); *United States v. Bertrand*, 926 F.2d 838 (9th Cir. 1991). The search warrant here fails to establish that a single entry into room 220 for just "one minute" is sufficient to ensure the court that drugs would probably be found in room 220. *See* Exhibit A, at 3. It cannot be said, moreover, that the single momentary entry after a two day surveillance could be deemed substantial. A single momentary entry does not make it probable that there were drugs in room 220 or that drugs were being sold out of room 220. That conclusion is even less likely given the myriad number of officers observing room 217 on October 10 and October 11. *See* Exhibit B, at 1. Notwithstanding such close scrutiny, the only mention of any activity by the alleged drug dealer into room 220 is his entering that room and being there with a Black woman for "one minute".

    2.   <u>The Four Corners of the Affidavit Failed to Set Forth Probable Cause to Search Room 220</u>

The four corners of the affidavit failed to set forth probable cause to search room 220 because the informant, the surveillance, and the alleged drug transactions made but a single momentary mention of any nexus to room 220. The prosecution

confuses its argument in support of a showing of probable cause to search room 217 with the nominal evidence set forth in the search warrant regarding room 220.

Initially, any information received from the informant fails to set forth probable cause to search room 220. For example, it cannot be ignored that some unknown informant[1] described the drug dealer in very general terms - "a Black male" in his mid to late 20's, approximately 5'10" tall, with a medium complexion and average build." *See* Exhibit A, at 2. Then after arriving at the Economy Inn, the informant seemed to point out the first Black male he saw - or so it seems given that Mr. Colbert does not match the identifying factors the informant gave the police other than being a medium complexioned Black male Mr. Colbert is six feet two and not five feet ten. Mr. Colbert is twenty-one years old and not in his mid to late twenties.

There is nothing about the informant, moreover, that would lead the court to conclude that he is "reliable." Saying it does not make it so; calling the informant "reliable" does not make him reliable. There is no evidence that this informant has successfully worked with these officers or that he can be trusted. In sum, Officer Beall either intentionally or recklessly withheld information bearing on the informant's credibility.

In the affidavit, Officer Beall reviews the officer's activities on March 10 and 11, 2009. On March 10, 2009, no mention whatsoever is made regarding any activity or any suspicious activity in room 220. The government cites Mr. Colbert's alleged interaction with the first Black woman as support for probable cause. However, the prosecution ignores that when Mr. Colbert allegedly met with that woman, he was in room 217. Afer being in room 220 with her for one minute, he returned to room 217 and stayed there, never returning to room 220 until after the search warrant was

---

[1] Mr. Colbert requests any and all discovery regarding the informant's name, criminal history and all discoverable information. Mr. Colbert also requests any and all notes taken or information provided by the informant. Any information should be provided well in advance of the hearing on this motion.

obtained.  Mr. Colbert's alleged interaction with the second Black female also fails to establish any nexus to room 220.[2]

The prosecution emphasizes the extent of the police surveillance of both rooms 217 and 220.  This surveillance, Officer Beall infers in his affidavit, was thorough, extensive and lengthy, beginning on the 10th and concluding on the 11th of March, the day the search warrant was sought.  Notwithstanding this level of attention, only a single momentary mention of Mr. Colbert's alleged entry into room 220 is made.  This dearth of information in the affidavit fails to set forth probable cause and therefore the evidence should be suppressed.

B.  MR. COLBERT IS ENTITLED TO A *FRANKS* HEARING BECAUSE MR. COLBERT HAS ESTABLISHED (1) AN INTENTIONAL OR DELIBERATELY MISLEADING OMISSION AND (2) THAT THE SEARCH WARRANT DOES NOT ESTABLISH PROBABLE CAUSE WITH THE OMISSION AND WARRANTS A *FRANKS* HEARING.

Even if the court finds that the affidavit set forth probable cause, the evidence found in room 220 should be suppressed. Officer  Beall misled the Court into issuing a search warrant by, *inter alia*, (1) mischaracterizing other officer's observations as his own; (2) omitting information that would have shown that the informant was not reliable; (3) omitting the fact that the person the informant described as the drug dealer looked markedly different than Mr. Colbert; (4) omitting the fact that the person on the staircase looked markedly different than Mr. Colbert; and (5) omitting the fact that Mr. Colbert did not rent out room 220.  As such, the evidence obtained after the warrant should be suppressed.

//

---

[2]  It is unclear whether there were two women or three women referenced in the affidavit.  Mr. Colbert requests discovery on all the women referenced therein. This includes, but is not limited to their names, criminal history, *Brady, Jencks and Giglio.*

4

### 1. There Were Misleading or Deliberate or Reckless Omissions In The Affidavit.

The prosecution completely ignores Officer Beall's statements which unbeknownst to Officer Beall were video recorded after he believed the tape recorder was turned off. Officer Beall's own statements satisfy the deliberate or reckless element. Officer Beall very clearly tells Officer White, "I'll have you help me spew some of that shit out to write my affidavit." *See* Exhibit C and D, at 11. Officer Beall collaborated with Officer White to enhance the affidavit and shroud it in a veil of incredulity. His words confirm his own willingness to lie and conceal information. That deliberate behavior is also evident given his other statement, namely, "[a]s far as I'm concerned, he fucking threw at you from the fucking room upstairs." *Id.* Contrary to what Officer Beall states **now**, this statement, especially heard in context, has nothing to do with a question, but everything to do with an attitude - an attitude of deception.

In addition, a review of the videotape shows the discrepancies between Officer Beall's account in the affidavit and reality. For example, his location at the Greyhound Station would make it impossible to see or hear what he claims he could see or hear. *See* Exhibit C. Officer Beall knowingly or recklessly included false information in the affidavit and misled the court.

### 2. There Were False Statements in the Affidavit.

The affidavit in this case not only omits information, but also includes false information. For example, Officer Beall includes a description of the alleged drug dealer and then assigns that information to Mr. Colbert as if it were true. By including this information, Officer Beall tries to persuade the Court that the informant was reliable and accurate. In addition, a second description of the drug dealer in the affidavit is inaccurate;,but, by including it, Officer Beall sought to corroborate the informant. Instead, this is completely wrong. Officer Beall describes

the person who was allegedly negotiating drugs with the first Black female as being 5'8" tall, 170 pounds, with short Afro-style hair. Again, Mr. Colbert is 6'2" and 208 pounds. *See* Exhibit F.

There are two serious errors the government concedes. First, the government acknowledged that "inclusion of the [informant's] criminal history would be the best practice." *See* Govt's Opposition, at 16. Certainly, an officer with seven years experience as a narcotics investigator would know the importance of including this information. *See* Declaration of Officer Gerald Beall, at para. 1. However, the government suggests that somehow it was better that Officer Beall included absolutely nothing about the informant's criminal history. *See* Govt's Opposition, at 16. That is false. By including nothing, the Court analyzing the affidavit would be led to believe that the informant had no arrests and no convictions. The judge was not put on notice to distrust the informant; instead, he was assured that he could rely on the informant's information and believe that this informant, unlike most, had no criminal history, was not a drug addict, or a pathological liar. Therefore, like *United States v. Hall*, 113 F.3d 157 (9th Cir. 1997), this case is egregious. Here, the officer misled the court about the informant's arrests. Here, the officer misled the court about the informant's convictions. And here, the prosecution continues to deny the informant's criminal history by failing to provide the defense with the informant's identity and criminal history.[3] As the Ninth Circuit said in *Hall*, "One of the most effective ways to lie is to mix falsehood with truth." *Id.* at 160. The Court also stated that the Court "depended on the prosecution and the trooper to present him with the truth and to bring to his attention problems with their informant's credibility. He was misled." *Id.* Officer Beall's deception exists here as well.

Second, the government also acknowledged that Officer Beall failed to "clearly state the source of [his] observations." *See* Govt's Opposition, at 19. Officer Beall

---

[3] Mr. Colbert once again requests discovery regarding the informant and requests this information forthwith in order to effectively present all relevant and meaningful information to the Court at the hearing on this motion.

1 failed again to take the better course of action.  Specifically, the affidavit should be
2 accurate.  Officer Beall should not have lied about who saw what.  "Specific
3 attribution to fellow officers is the best and preferred practice." *Id.* Yet, the
4 prosecution dismisses Officer Beall's failures.  For an officer as experienced as
5 Officer Beall, these mischaractizations cannot continue to be called "simple
6 oversights."

7     *United States v. Sitton*, 968 F.2d 947 (9th Cir. 1992), is inapposite; but, this
8 case is analogous to *United States v. Davis*, 714 F.2d 896 (9th Cir. 1989).
9 Importantly, the Court of Appeal in *Sitton* saw no reason to doubt the district court's
10 conclusion that the omission was a simple oversight. *Id.* at 955-956.  Here, there are
11 no findings this district court must adopt.  And, when viewed in conjunction with the
12 audio recording, the only conclusion is that Officer Beall was knowingly false.

13     Where the officers sought a search warrant of two rooms, and Mr. Colbert's
14 entry into room 220 was a single momentary one, failing to determine who rented out
15 rooms 217 and 220 should not be summarily dismissed by saying the officers cannot
16 be expected to "track down every piece of information that might potentially be
17 relevant." *See* Government's Opposition, at 23.  Knowing who rented the rooms was
18 key.  Failing to note that two men, not Mr. Colbert, rented room 220 was critical.

20     D.    THE SEARCH WAS NOT CONSTITUTIONAL BECAUSE IT WAS
21         NOT CONDUCTED WITH A GOOD FAITH RELIANCE ON THE
22         SEARCH WARRANT.

23     The pattern of deception in the affidavit can lead to only one conclusion
24 suppression.  The officers should not now be able to hide behind the good faith
25 exception.  The single momentary discussion regarding room 220 failed to establish
26 "more than [a] fair probability that narcotics would be found in room 220." *See*
27 Govt's Opposition, at 24.

28     Here, like in *United States v. Hove*, 848 F.2d 137 (9th Circ. 1988), the affidavit

7

did not link the search location, room 220, to the defendant, Mr. Colbert. Assuming *arguendo* that agents purchased drugs from Mr. Colbert, the nexus to room 220 is absent where considerable surveillance showed only a nexus to room 217. Therefore, as in *Hove,* "it is clear that probable cause to search [room 220] was not established before the magistrate because the affidavit submitted to obtain the warrant did not explain the significance or relevance of searching this particular location." *Id.* at 139. (citations omitted). As the Ninth Circuit made clear, "[i]t is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *Id.* at 140. Because no such facts were stated in the affidavit, any official belief in the existence of probable cause must also be considered unreasonable and cannot be saved by the good faith exception.

      Finally, the deterrent purpose of the exclusionary rule would be furthered by excluding the evidence obtained by the agents.[4] Whenever agents lie, suppression serves an important deterrence. Alternatively, any unreasonable reliance on a faulty warrant should be deterred.

      E.    MR. COLBERT'S STATEMENTS SHOULD BE SUPPRESSED.

      The Public Safety exception does not justify the officer's questioning Mr. Colbert. *United States v. Reilly*, 224 F.3d 986 (9th Cir. 2000) is inapposite. In *Reilly*, the officers felt justified in asking Mr. Reilly about a weapon for three reasons: first, although Mr. Reilly was on the floor, face-down, he began to bring his hands down to his front waist-band; second, the agents were well aware of Reilly's use of weapons in past bank robberies; third, any questioning was asked after ordering Reilly to reposition his hands. *Id.* at 992. In this case, none of those factors exist. In fact, there was absolutely no reason to believe that Mr. Colbert was armed.

---

[4] Mr. Colbert again asks for any *Henthorn*, *Brady* or *Giglio* pertaining to any of the officers and agents involved in this case.

The agents had no information regarding Mr. Colbert's prior record or any history of violence. Mr. Colbert, moreover, immediately complied and made no attempt to reach his waist-band, or any area. Mr. Colbert did not have to be told to lie still. He immediately complied. As such, unlike *Reilly*, the Public Safety exception does not apply and his statements should be suppressed.

## II.
## CONCLUSION

The affidavit, authored by Officer Beall, that was the basis for the search warrants for rooms #217 and #220 of the Economy Inn, contained at least one intentional or reckless falsehood and multiple omissions that severely compromised the probable cause which formed the basis for the warrants. Therefore, there should be either a *Franks* hearing, or, alternately, the court should find that the search warrant lacked probable cause. In addition, any and all statements purportedly made by Mr. Colbert regarding the firearm should be suppressed.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: November 16, 2009        By         /S/
                                SYLVIA TORRES-GUILLÉN
                                Deputy Federal Public Defender

9