SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
SYLVIA TORRES-GUILLÉN (No. 164835)
Deputy Federal Public Defender
(E-mail: Sylvia_Torres-Guillen@fd.org )
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-2644
Facsimile (213) 894-0081

Attorneys for Defendant
CALVIN C. COLBERT, JR.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) NO. CR 09-301-GW |
|---|---|
| Plaintiff, | ) |
| v. | ) ADDITIONAL BRIEFING RE: *DAVIS* AND *OROZCO* IN SUPPORT OF MR. COLBERT'S MOTION TO SUPPRESS EVIDENCE |
| CALVIN C. COLBERT, JR., | ) |
| Defendant. | ) Hearing Date: 12/11/09 |
|  | ) Time: 10:30 a.m. |
|  | ) Place: Courtroom No. 10 |

Defendant, Calvin Charles Colbert, Jr., by and through his counsel, Deputy Federal Public Defender Sylvia Torres-Guillén, hereby submits additional briefing re: *Davis* and *Orozco* in support of Mr. Colbert's Motion to Suppress Evidence.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: December 10, 2010      By        /S/
                                SYLVIA TORRES-GUILLÉN
                                Deputy Federal Public Defender

# I.

# ARGUMENT

### A.   THE SCOPE OF *DAVIS* WARRANTS SUPPRESSION IN THIS CASE.

In *United States v. Davis*, 714 F.2d 896 (9th Cir. 1983) ("*Davis II*"), the Ninth Circuit held a search warrant invalid, and the evidence seized pursuant to it subject to suppression, because the affiant in the application for the warrant misrepresented certain facts. Specifically, the police officer affiant represented that he had personal knowledge of information, when in fact he had been told that information by fellow officers. *See id.* at 897-98. Relying on *Franks v. Delaware*, 438 U.S. 154 (1978), the Ninth Circuit held that when a false statement in an affidavit in support of a warrant is (1) "either intentional or made with reckless disregard for the truth," and (2) "necessary to the finding of probable cause," the warrant is invalid. *Davis II*, 714 F.2d at 899 n.5. In concluding that the warrant in *Davis II* was invalid, the court excised the challenged statements from the affidavit and found the remaining information insufficient to establish probable cause. *See id.* at 900-01; *see also United States v. Davis*, 663 F.2d 824, 830 (9th Cir. 1981) ("*Davis I*") (conducting same inquiry, prior to remand to district court for evidentiary hearing).

In *Davis II*, the entire affidavit was not untruthful. Instead, the affiant had personal knowledge of some of the facts stated in the affidavit. The *Davis II* court indicated that the affiant "had no personal knowledge of *much of* the information contained in the affidavit," and "admitted that *much of* the . . . affidavit had been copied verbatim" from an affidavit drafted by another officer. *Id.* at 897 (emphasis added); *see also id.* at 899 ("The record . . . permits no conclusion other than that such statements in the . . . affidavit were *often* false." (emphasis added)); *id.* at 899 n.4 (transcribing affiant's testimony that he did not have personal knowledge of information provided by informants to officers "[w]hen [he] wasn't in their presence,"

implying that he was personally present for some interviews).

Thus, *Davis II*'s holding is not limited to cases where the affiant has no personal knowledge of *any* statements in the affidavit presented in support of a search warrant. As in this case, *Davis II* itself is a case where the affiant had personal knowledge of some of the information presented in the affidavit, but also falsely represented that he had personal knowledge of other information, when that information was instead presented to him by other officers. The test in such a case is whether, when the false information is excised from the affidavit, there remains sufficient information to support a finding of probable cause. Here, where Officer Beall had not seen first-hand much of the information contained in the affidavit, that information should all be excised. Once the information is excised, Mr. Colbert respectfully requests that the Court find that there is not sufficient information to support a finding of probable cause.

### B. MR. COLBERT'S ALLEGED STATEMENT REGARDING THE GUN SHOULD BE SUPPRESSED.

Mr. Colbert's alleged statements regarding the gun can be suppressed if the Court finds that the "public safety" exception does not apply. The government should have to prove that the officers knew a gun may be present and that objectively, it posed an immediate danger to the public safety. The government's argument that it has established this proof is not compelling because it cannot show an objective, imminent need to protect the public from a known harm.

The public safety exception is derived directly from *New York v. Quarles*, 467 U.S. 649 (1984). There the Court held that law enforcement can ask questions that may lead to incriminating responses when the questions are "reasonably prompted by a concern for the public safety." *Id*. 467 U.S. at 656. In *Quarles*, the defendant, who had just been accused of rape by the alleged victim, was found by the police in a grocery store. A police officer frisked him and found he was wearing a gun holster

which was empty.  The officer handcuffed him and then asked him where the gun was.  The defendant nodded in the direction of some empty cartons and said "over there", which is where the officers found a pistol.   The Court reasoned the officer's question was appropriate in the circumstances because as long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it posed a danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.  Weighing the social cost of preventing an officer from asking such a question, the Court found that a "public safety" exception to *Miranda* was necessary.

The Court distinguished *United States v. Orozco*, 394 U.S. 324 (1969) because the officers' questions in that case were investigatory and did not in any way relate to an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon.  Put another way, "there was no exigency requiring immediate action by the officers beyond the normal need expeditiously to solve a serious crime." *Quarles*, 467 U.S. at 659, n. 8.

But, in *Orozco*, the Court did not make any such distinction.  The Court held quite simply that before asking a defendant, who was in custody, about whether he owned a gun and where that gun might be, the officers were required to read him his rights pursuant to *Miranda*.  The fact that the officers were investigating a murder involving a shooting that happened several hours before they confronted the defendant in the bedroom of a boardinghouse made no difference to the Court.  Nor did the fact that the gun was in the washing machine in a backroom of the boardinghouse where anyone with access to that washing machine might later come upon it.  "The *Miranda* opinion declared that the warnings were required when the person being interrogated was 'at the station or otherwise deprived of his freedom of action in any significant way.'" *Id*., 394 U.S. at 327.  The Court noted it was not expanding or extending the *Miranda* rule but was simply applying a "well-considered holding." *Id*.

The government's reliance on *United States v. Reilly*, 224 F.3d 986 (9th Cir. 2000) is unwarranted here and creates yet another unnecessary exception to *Miranda* and *Orozco*. This is so because, unlike the instant case, the police in *Reilly* had information that the defendant was armed, extremely dangerous and had just been incited to flee as they burst into his motel room.

In *Reilly*, the defendant was a wanted suspect in twenty-seven bank robberies in twenty-three cities in ten different states, including for a recent robbery in Arizona. *Id.*, 224 F.3d at 989. Police officers also considered him a strong suspect in an armed car-jacking of a red Volkswagen Cabriolet in Chattanooga, Tennessee. *Id*. They found this car outside a motel in Arizona and began surveillance. When a woman came out of the room by which the car was parked, an agent immediately began questioning her. She claimed ownership of the Cabriolet and was thereafter arrested. While being led to a police car by an agent, however, she broke away and yelled, "Run, Buddy!" *Id*.

The agents then kicked in the door of the motel room. Reilly was sitting on the couch and the agents ordered him to the ground as they held various firearms on him at close range. *Id.*, at 990. As an agent approached Reilly to handcuff him, Reilly began to bring his arms to his front waistband, and the agents told him to reposition his arms, which he did. *Id*. An agent later testified that his experience as a federal agent taught him that the front waistband is a place people keep weapons. Therefore, that agent then asked Reilly, "Where is the gun?" to which Reilly responded that it was in a black bag in the bedroom. At this point, Reilly had received no Miranda warning. *Id*.

The Court held no *Miranda* warning was required because the question "Where is the gun?" was not investigatory in nature. *Id*. at 992. Moreover, the Court found, the question was sufficiently limited in scope to allow the officers to quell the volatile situation they faced. *Id*. Therefore, the officers had an objectively reasonable need to protect themselves given the instability of the situation and the gun and Reilly's

1  statements would be admissible against him at trial. *Id*. at 993.

2      Here, the encounter with Mr. Colbert was neither volatile or unstable. The
3  agent's question of Mr. Colbert solicited a coerced and involuntary response. With
4  no reason to believe Mr. Colbert had a gun and with no imminent concern for the
5  public safety, the agents cannot hide behind the public safety exception. Any
6  incriminating statements the agents seized from Mr. Colbert during this encounter
7  should be suppressed.

8

9                                       **II.**

10                               **CONCLUSION**

11     For the foregoing reasons, Mr. Colbert respectfully requests that the Court grants
12 his Motion to Suppress Evidence.

13                                Respectfully submitted,

14                                SEAN K. KENNEDY
                                Federal Public Defender
15

16
   DATED: December 10, 2009         By          /S/
17                                 SYLVIA TORRES-GUILLÉN
                                Deputy Federal Public Defender
18

19

20

21

22

23

24

25

26

27

28