1  GEORGE S. CARDONA
   Acting United States Attorney
2  SHERI PYM
   Assistant United States Attorney
3  Chief, Riverside Branch Office
   JERRY C. YANG
4  Assistant United States Attorney
   California Bar Number 241323
5  Riverside Branch Office
        3880 Lemon Street, Suite 210
6       Riverside, California 92501
        Telephone: (951) 276-6221
7       Facsimile: (951) 276-6202
        E-mail: jerry.yang@usdoj.gov
8
   Attorneys for UNITED STATES OF AMERICA
9

10                 UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  UNITED STATES OF AMERICA,      ) CR No. 09-301-GW
                                   )
14            Plaintiff,           ) GOVERNMENT'S BRIEF RE
                                   ) APPLICATION OF UNITED STATES V.
15            v.                   ) ORAZCO AND THE PUBLIC SAFETY
                                   ) EXCEPTION
16  CALVIN COLBERT,                )
                                   ) Hearing
17            Defendant.           ) Date: December 14, 2009
                                   ) Time: 11:00 a.m.
18                                 )
                                   )
19                                 )
                                   )
20  _____

21       Plaintiff United States of America, by and through its

22  attorney of record, Assistant United States Attorney Jerry C.

23  ///

24

25

26

27

28

Yang, hereby submits the attached Brief Regarding Application of United States v. Orazco and the public safety exception as requested by the Court.

DATED: December 13, 2009

                              Respectfully submitted,

                              GEORGE S. CARDONA
                              Acting United States Attorney

                              SHERI PYM
                              Assistant United States Attorney
                              Chief, Riverside Branch Office


                               /s/
                              _____
                              JERRY C. YANG
                              Assistant United States Attorney
                              Attorneys for Plaintiff
                              United States of America

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

On March 11, 2009, agents and officers from the Alcohol
Tobacco and Firearms and San Bernardino Police Department
(collectively, "agents") executed a search warrant on a motel
room in San Bernardino, California.  Upon entering the room, they
found defendant Calvin Charles Colbert, Jr. in the process of
counting his money while sitting at a table with 21.31 grams of
crack cocaine in little baggies in front of him.  The agents
ordered defendant to the ground, to which he complied.  Prior to
searching defendant, for his own safety, Officer Gerald Beall
asked defendant if he had any weapons.  Defendant replied yes.
Officer Beall asked defendant where the weapon was and defendant
motioned towards the dresser near the entrance.  Officer Beall
clarified his question and asked defendant if he had any weapons
on his person, to which defendant responded, "no, it's in the
drawer."  The agents recovered a loaded .22 caliber Ruger
semi-automatic firearm from the dresser and 32 rounds of live
ammunition near the bed.

On October 28, 2009, defendant filed a Motion to Suppress
Evidence recovered pursuant to the search warrant based upon,
among other things, the statements he made about the gun should
be suppressed because he was not <u>Mirandized</u>.  On December 7 and
11, 2009, the Court held hearings on defendant's Motion and asked
the parties to brief whether <u>Orozco v. Texas</u>, 394 U.S. 324
applied to the instant matter and assuming arguendo, if the
agent's first and second questions to defendant fell outside of

1

1  the public safety exception, does that impact Officer Beall's

2  third question, which was within the scope of the public safety

3  exception?

4  **II.  ARGUMENT**

5      A.   <u>Orozco</u> Does Not Prohibit Officers From Asking Whether A

6           Suspect Has A Weapon And Where It's Located

7      <u>Orozco</u> does not apply to the instant case.  In <u>Orozco</u>, four

8  officers investigating a murder went to a boardinghouse in the

9  middle of the night and spoke to Orozco about whether he had been

10 to the scene of the crime, whether he owned a pistol, and where

11 the pistol was located.  <u>Orozco</u>, 394 U.S. at 325-326.  The

12 central issue in <u>Orozco</u> was whether this interview was

13 sufficiently custodial in nature that the defendant should have

14 received <u>Miranda</u> warnings.  <u>Id</u>. at 326-327.  The Court did not

15 consider whether the form and structure of the questioning fell

16 within the public safety exception.

17     Accordingly, <u>Orozco</u>, <u>does not</u> stand for the rule that it is

18 <u>never</u> permissible to ask a suspect whether he/she has a weapon

19 and if so, for the location of the gun.  Indeed, numerous

20 opinions issued after <u>Orozco</u> by both the Supreme Court and Ninth

21 Circuit have upheld such questioning[1].  <u>See</u> <u>New York v. Quarles</u>,

22 467 U.S. 649, 652 (U.S. 1984) (permissible for officer to ask

23 defendant where the gun was); <u>United States v. Reilly</u>, 224 F.3d

24 986, 992 (9th Cir. 2000) (officer's question, "Where is the

25

---

26     [1] To the extent the Court interprets <u>Orozco</u> to hold that
   officers are never permitted to ask a suspect whether he/she has
27 a weapon, and/or the location of such a weapon, the government
   respectfully submits that <u>Orozco</u> has been overruled by <u>Quarles</u> on
28 this point.  <u>New York v. Quarles</u>, 467 U.S. 649, 652 (U.S. 1984).

gun?", was proper under the public safety exception); and <u>United States v. Brady</u>, 819 F.2d 884 (9th Cir. 1987) (permissible for officer to ask if suspect had a gun in the car).  As such, Officer Beall's first two questions to defendant about whether he had a weapon, and the location of the this weapon, is permitted under the public safety exception.

B.   <u>Orozco Is Distinguishable</u>

Moreover, the facts here are distinguishable from the facts in <u>Orozco</u>.  The Ninth Circuit has considered the rule derived from <u>Quarles</u> and <u>Orozco</u>, taken together.  <u>Brady</u>, 819 F.2d 884, 887-888.  In <u>Brady</u>, the police stopped the defendant, who was suspected of having recently assaulted a woman.  <u>Id</u>.  An officer ordered him out of his car, frisked him, and found no weapons. <u>Id</u>.  Before giving the defendant his <u>Miranda</u> warnings, the officer asked, among other things, if he had a gun in the car. <u>Id</u>.

The Ninth Circuit distinguished the facts from <u>Orozco</u>,

> In <u>Orozco</u>, police arrested the suspect in his bedroom at 4:00 a.m. to ask him about his whereabouts at the time of a murder and whether he owned a pistol.  The questions were investigatory and sought to elicit testimonial evidence.  They were not aimed at controlling an immediate threat to public safety. [Citations omitted].  <u>Brady</u>, 819 F.2d at 888.

The court noted that although in <u>Quarles</u>, the question "Where is the gun?" was more "immediate, spontaneous, and urgent" than the question in <u>Brady</u>, the officer's questions in <u>Brady</u> nonetheless "arose from his concern with public safety" and "his desire to obtain control of what could be a dangerous situation," and not "to obtain evidence of a crime."  <u>Id</u>. at 888.

Likewise, here, the questioning arose from a concern for

3

public safety and not to obtain evidence.  Agents detaiend
defendant in a small motel room located in a crime-infested area.
Less than three hours earlier, agents had just conducted a
successful purchase of crack cocaine from defendant.  Officer
Beall had just detained defendant and prior to searching
defendant, asked whether defendant had any weapons.  This limited
question, which invited a yes/no response, was aimed at
protecting both officers and defendant and not designed to elicit
testimonial evidence.  See United States v. Carrillo, 16 F.3d
1046, 1050-51 (9th Cir. 1994) (noting the non-investigatory
nature of an officer's question because' it called for a 'yes' or
'no' answer, not a testimonial response, and because after
defendant gave the incriminating response, the officer asked no
more questions).

After defendant answered yes, Officer Beall properly sought
clarification by asking for the location of the gun.  When
defendant motioned towards the dresser, rather than immediately
asking follow-up questions regarding the gun and thereby seeking
testimonial responses, Officer Beall instead further clarified
the question and asked defendant whether he had any weapons on
his person.  Such questions are all within the scope of the
public safety exception.

    C.   Officer Beall's Question to Defendant Regarding Whether
            Defendant Had Any Weapons On His Person And Defendant's
            Response, Are Not Tainted

The government has been unable to find any case-law that
directly addresses whether an initial question/answer that is
outside the scope of the public safety exception has any effect

4

on a subsequent question/answer that is within the scope of the public safety exception.  However, United States v. Elstad may shed some light.  Oregon v. Elstad, 470 U.S. 298 (1985) (overruled on other grounds by Missouri v. Seibert, 542 U.S. 600, 616 (2004); see United States v. Stewart, 536 F.3d 714, 719 (7th Cir. 2008) ("in cases not involving the deliberate use of a two-step interrogation, Elstad appears to have survived Seibert").)

In Elstad, the Court held that it "simply does not matter that a statement is procured because an earlier statement was elicited from a suspect in violation of Miranda." United States v. Orso, 275 F.3d 1190, 1191 (9th Cir. 2001) (citing Elstad, 470 U.S. 298).  As long as the earlier statement was not involuntary due to "unconstitutional coercion, the subsequent, voluntary, warned statement is still admissible--without regard to whether the subsequent statement was "tainted" by the earlier statement." Id.

Here, the same analysis applies because Officer Beall's first two questions to defendant about whether defendant had any weapons and if so where, were not part of a calculated plan to obtain un-Mirandized testimony.  Instead, as set forth above, these questions were asked in the interest of officer and defendant safety.  Should the Court find that the first two initial questions were outside the scope of the public safety exception, Officer Beall's third question to defendant, did he have any weapons on his person, is permitted by the public safety exception.  Under Elstad, the first two questions should not taint the admissibility of defendant's response to Officer

1  Beall's third question, namely, "It's [referring to the gun] in

2  the drawer."

3  **III. CONCLUSION**

4       For the foregoing reasons, the government respectfully

5  requests that the Court find that all of Officer Beall's

6  questions to defendant and defendant's responses, fall within the

7  public safety exception.  Alternatively, should the Court find

8  otherwise, the government submits that the Court should not

9  suppress Officer Beall's third question and defendant's response.

10 DATED: December 13, 2009

11                                    Respectfully submitted,

12                                    GEORGE S. CARDONA
                                      Acting United States Attorney
13
                                      SHERI PYM
14                                    Assistant United States Attorney
                                      Chief, Riverside Branch Office
15

16                                     _/s/_____
                                      JERRY C. YANG
17                                    Assistant United States Attorney
                                      Attorneys for Plaintiff
18                                    United States of America

19

20

21

22

23

24

25

26

27

28

                                      6