ANDRÉ BIROTTE JR.
United States Attorney
SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office
JERRY C. YANG
Assistant United States Attorney
California Bar Number 241323
Riverside Branch Office
     3880 Lemon Street, Suite 210
     Riverside, California 92501
     Telephone: (951) 276-6221
     Facsimile: (951) 276-6202
     E-mail: jerry.yang@usdoj.gov

Attorneys for UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR No. 09-301-GW |
|---|---|---|
| Plaintiff, | ) ) | GOVERNMENT'S OPPOSITION TO DEFENDANT CALVIN CHARLES |
| v. | ) ) ) | COLBERT, JR.'S MOTION TO REQUIRE PRODUCTION OF LAW |
| CALVIN CHARLES COLBERT, JR., | ) ) | ENFORCEMENT PERSONNEL FILES; COMPLAINT RECORDS AND |
| Defendant. | ) ) | INVESTIGATION RECORDS; DECLARATION OF JERRY C. YANG |
| | ) ) | Hearing |
| | ) ) | Date: April 12, 2010 Time: 11:00 a.m. |
| | ) | |

    Plaintiff United States of America, by and through its

attorney of record, Assistant United States Attorney Jerry C.

Yang, hereby submits its Opposition to Defendant Calvin Charles

Colbert, Jr.'s Motion to Require Production of Law Enforcement

Personnel Files; Complaint Records and Investigation Records.

    This opposition is based upon the attached memorandum of

///

1  points and authorities, the attached declaration of Jerry C.

2  Yang, the files and records of this case, and any additional

3  evidence or argument the Court may wish to consider.

4  DATED: March 25, 2010

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office


         /s/
_____
JERRY C. YANG
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On March 11, 2009, agents and officers from the Alcohol Tobacco and Firearms and San Bernardino Police Department (collectively, "agents") used a undercover officer to purchase crack cocain from defendant Calvin Charles Colbert, Jr., who was operating out of a motel room in San Bernardino, California. Agents used this successful purchase to obtain a search warrant on defendant's motel room.  Later that day, agents executed this search warrant and found defendant in the process of counting his money while sitting at a table with 21.31 grams of crack cocaine in little baggies in front of him.  A loaded semi-automatic handgun was found in a nearby dresser.

On October 28, 2009, defendant filed a Motion to Suppress Evidence recovered pursuant to the search warrant.  Defendant argues the search warrant was defective because it: 1) lacked probable cause; and 2) contained false statements and material omissions because it failed to properly attribute observations. On or about December 1, 2009, the government had the Bureau of Alcohol and Tobacco ("ATF") conduct a Henthorn/Brady review of the personnel files of the federal agents expected to testify. Declaration of Jerry C. Yang ("Yang Decl."), ¶ 2.  The government also had San Bernardino Police Department ("SBPD") conduct a Henthorn/Brady review of the personnel files of its own officers involved in the matter.  Id.  Both of these reviews did not reveal any Henthorn or Brady material to be disclosed.  Id. at ¶ 3.

On December 7, 10, 11, and 14, 2009, the Court held a Franks

1

1  hearing.  On December 15, 2009, the Court relieved Deputy Federal
2  Public Defender Sylvia Torres-Guillen as counsel for defendant
3  and appointed current defense counsel, Larry Bakman, on December
4  21, 2009.  The Court also continued the suppression hearing to
5  April 12, 2010 to allow new defense counsel sufficient time to
6  prepare.

7      However, subsequently, on February 18, 2010, United States
8  District Court Judge Robert H. Whaley issued an adverse
9  credibility finding against SBPD Officer Gerald Beall in an
10 unrelated matter, United States v. Vincent Young, ED CR No.
11 09-081-RHW.  The government immediately disclosed this order to
12 defendant on February 19, 2010.  Yang Decl., ¶ 4.  On March 19,
13 2010, defendant filed his Motion to Require Production of Law
14 Enforcement Personnel Files; Complaint Records and Investigation
15 Records of the SBPD officers involved in this matter.

16     The government is not obligated to examine the personnel
17 files of state law enforcement officers where such files are not
18 within the government's actual possession.  United States v.
19 Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).  Although the
20 government has possession of summaries of internal affair
21 investigations of citizen complaints of three of the SBPD
22 officers involved in this matter, the government is bound by a
23 protective order to limit their disclosure only for use in the
24 Young matter.  Yang Decl., ¶5.  See also Exh. B.  Defendant
25 should properly subpoena SBPD for these records, and allow SBPD
26 the opportunity to determine whether to object to their
27 disclosure and/or seek a protective order.  With respect to the
28 remaining personnel files sought by defendant, the Court should

2

1  deny defendant's motion because the government does not have
2  custody of the personnel records of local officers and has more
3  than complied with its Henthorn/Brady obligations.

4  II.  STATEMENT OF FACTS

5      A.   The Government Has Complied With Its Brady and Henthorn
6           Obligations

7      On November 30, 2009, in anticipation of the suppression
8  hearing and trial, the government requested ATF to conduct
9  Henthorn/Brady reviews of the federal agents involved in this
10 case and expected to testify for the government.  Yang Decl., 2.
11 ATF conducted Henthorn/Brady reviews on or about December 3, 2009
12 and December 7, 2009.  Id.  These reviews revealed no materials
13 to be disclosed.  Id. at ¶ 3.  Moreover, at the same time, the
14 government also requested SBPD to conduct Henthorn/Brady reviews
15 of the personnel files of the SBPD officers involved in this
16 action and expected to testify for the government.  Id.  SBPD
17 notified the government on November 30, 2009 that it reviewed the
18 personnel files of Officers Beall and White, and on December 1,
19 2009 on Officer Landeros, all with negative results.  Id. at ¶ 3.

20     B.   United States v. Vincent Young, ED CR No. 09-081-RHW

21     In an unrelated matter, United States v. Vincent Young, ED
22 CR No. 09-081-RHW, defendant Vincent Young subpoenaed the
23 personnel records of several SBPD officers involved in that case,
24 which included some of the officers involved in the instant case,
25 Officers Beall, Ricardo Landeros, and Anthony White.  See Exhibit
26 A to Yang Decl ("Exh. A").  SBPD moved to quash the subpoena on
27 January 13, 2010 on the grounds that the information sought was
28 irrelevant, overbroad, and confidential.  Id.  Alternatively,

1  SBPD requested the court to review the personnel records in

2  camera.  Id.  The court conducted an in camera review of the

3  documents and ordered that the personnel records be disclosed to

4  defendant Young subject to a protective order.  See Exh. B.

5      SBPD produced these personnel records to defendant Young and

6  the government subject to a protective order.  Id. at ¶ 6.  See

7  also, Exh. B.  The protective order limited dissemination of the

8  personnel records to: "1) counsel for a party to this action; 2)

9  staff personnel employed by counsel for any party; 3) the court

10 and its personnel, in connection with this litigation; 4) experts

11 or consultants retained to work on this case by counsel for any

12 party; and 5) investigators retained by counsel for any party to

13 this case."  Exh. B, ¶ 4.  Moreover, "[u]nder no circumstances

14 shall Confidential Information be used in any proceeding other

15 than the instant case, including any retrial or appeal, or be

16 disseminated in any form, except by court order."  Exh. B, ¶ 1.

17 This case is still pending.

18      On February 18, 2010, Judge Robert H. Whaley issued an

19 adverse credibility finding against Officer Beall.  The following

20 day, government counsel in the instant case became aware of this

21 finding and immediately turned over the finding to defense

22 counsel that same day.  Yang Decl., ¶ 4.

23 III. ARGUMENT

24      A.   The Government Has Faithfully Complied With Its

25           Henthorn and Brady Obligations

26      Consistent with its standard policy, the government has

27 diligently requested ATF to conduct Henthorn/Brady reviews of the

28 federal agents involved in this case.  ATF conducted

                              4

1  Henthorn/Brady reviews on or about December 3, 2009 and December

2  7, 2009, which revealed no materials to be disclosed.  Yang

3  Decl., ¶¶ 3-4.  Although the Ninth Circuit has held that the

4  government does not have an affirmative duty to conduct a

5  Henthorn review of personnel records of officers employed by

6  state and local governments, the government here went beyond its

7  required duties by also requesting SBPD to conduct a

8  Henthorn/Brady review of the personnel files of the SBPD officers

9  involved in this action.  Dominguez-Villa, 954 F.2d at 562.  SBPD

10 notified the government on November 30, 2009 that it reviewed the

11 files on Officers Beall and White, and on December 1, 2009 that a

12 review was conducted on Officer Landeros, all with negative

13 results.  Yang Decl., ¶ 3.

14      Moreover, when the government has discovered Henthorn

15 material, the government has not hesitated in turning over such

16 material to defendant.  On February 18, 2010, Judge Whaley issued

17 an adverse credibility finding against Officer Beall.  Yang

18 Decl., ¶ 4.  The very next day, government counsel in the instant

19 matter became aware of this finding and immediately disclosed it

20 to defendant within hours of discovery.  Id.  The government has

21 faithfully complied with its Henthorn/Brady obligations, and gone

22 beyond its minimum obligations as set forth in Dominguez-Villa by

23 directing SBPD to conduct a Henthorn/Brady review of SBPD

24 officers.

25      B.   The Government Does Not Have Custody and Possession of

26           the Personnel Files of SBPD Offices

27      The government does not have actual custody and control over

28 the personnel files of SBPD officers, and as such, cannot be

1   required to produce the personnel files of these state law

2   enforcement witnesses.  <u>Dominguez-Villa</u>, 954 F.2d at 566.  In

3   <u>Dominguez-Villa</u>, the Ninth Circuit held that the government is

4   not obligated to review state law enforcement files not within

5   its "actual possession, custody, or control."  <u>Id.</u>  Here, the

6   personnel records of the SBPD officers are not within the

7   possession of the government.  Yang Decl., ¶ 6.  SBPD has

8   indicated that it cannot and will not produce such records absent

9   a court order.  <u>Id.</u> at ¶ 5.  Rather than seeking these records

10  from the government, who has no custody or control over them,

11  defendant should instead subpoena these records from SBPD[1].

12        C.    <u>Although The Government Has Limited Summaries of</u>

13              <u>Investigations of Citizen Complaints of SBPD Officers</u>

14              <u>Gerald Beall, Ricardo Landeros, and Anthony White, It</u>

15              <u>Cannot Produce Them Without Violating a Protective</u>

16              <u>Order</u>

17        In the course of an unrelated criminal action, <u>United States</u>

18  <u>v. Vincent Young</u>, ED CR No. 09-081-RHW, the government obtained

19  summaries of internal affairs investigations of citizen

20  complaints of SBPD Officers Gerald Beall, Ricardo Landeros, and

21  Anthony White pursuant to a protective order.  Yang Decl., ¶ 6.

22  The protective order, however, severely limits dissemination of

23  these records to: "1) counsel for a party to this action; 2)

24  staff personnel employed by counsel for any party; 3) the court

25  and its personnel, in connection with this litigation; 4) experts

26  or consultants retained to work on this case by counsel for any

27  _____

28        [1] Although the government has advised defense counsel to do
    so, defense counsel continues to insist that the government,
    rather than SBPD, should produce these records.

party; and 5) investigators retained by counsel for any party to this case." Exh. B, ¶ 4.  Moreover, the government is explicitly barred from disseminating these personnel records to defendant in the instant case.  The protective order specifically states, "[u]nder no circumstances shall Confidential Information be used in any proceeding other than the instant case, including any retrial or appeal, or be disseminated in any form, except by court order."  Exh. B, ¶ 1.

In light of these restrictions, the government cannot produce these records to defendant (or this Court) without violating Judge Whaley's protective order.  Accordingly, the government requests that defendant properly subpoena SBPD for these records, and allow SBPD the opportunity to determine whether to object to their disclosure subject to a protective order.

IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's Motion to Require Production of Law Enforcement Personnel Files; Complaint Records and Investigation Records.

DATED: March 25, 2010

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office

/s/
JERRY C. YANG
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

7

<u>DECLARATION OF JERRY C. YANG</u>

I, Jerry C. Yang, declare as follows:

1.    I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California. I am one of the attorneys representing the government in this case, <u>United States v. Calvin Charles Colbert, Jr.</u>, No. CR 09-301-GW.

2.    On November 30, 2009, in anticipation of the upcoming suppression hearing and trial in this matter, pursuant to standard policy and procedure, I requested the Bureau of Alcohol Tobacco and Firearms ("ATF") to conduct <u>Henthorn</u>/<u>Brady</u> reviews of the federal agents involved in this case that were expected to testify on behalf of the government.  I also requested San Bernardino Police Department ("SBPD") to conduct <u>Henthorn</u>/<u>Brady</u> reviews of the personnel files of the SBPD officers expected to testify in this action on behalf of the government, Officers Gerald Beall, Ricardo Landeros, and Anthony White.

3.    On or about December 3, 2009 and December 7, 2009, ATF informed me that it conducted reviews and no <u>Henthorn</u>/<u>Brady</u> materials were discovered.  Likewise, SBPD notified me on November 30, 2009 that it reviewed the personnel files of Officers Beall and White, and on December 1, 2009 on Officer Landeros, all with negative results.

4.    On February 19, 2010, I learned that Judge Robert H. Whaley had issued an adverse credibility finding against Officer Beall on February 18, 2010 in the matter of <u>United States v. Vincent Young</u>, ED CR No. 09-081-RHW.  I obtained a copy of that order on February 19, 2010 and immediately turned over a copy to

1

1  defense counsel, Larry Bakman, that same day.

2      5.    On March 22, 2010, I obtained copies of SBPD's Motion

3  to Quash the Subpoena issued by defendant Vincent Young, and the

4  protective order issued by the court in that case.  Attached as

5  Exhibit A is a true and correct copy of SBPD's Motion.  Attached

6  as Exhibit B is a true and correct copy of the protective order

7  signed by the court.  I also contacted San Bernardino Deputy City

8  Attorney Diane Roth regarding the personnel files requested by

9  defendant Colbert.  She indicated to me that SBPD cannot produce

10  the personnel records to either defendant Colbert or the

11  government without a court order.

12      6.    I also checked the government's files and determined

13  that the government received summaries of internal investigation

14  files regarding citizen complaints of the SBPD officers involved

15  in the Young matter pursuant to the protective order attached as

16  Exhibit B.  Specifically, with respect to the SBPD officers

17  involved in the instant action, the government has the summaries

18  regarding Officers Beall, Landeros, and White.  These summaries,

19  however, are covered by the protective order, and cannot be

20  disseminated to defense counsel here without violating the

21  protective order.  The government, however, does not have any

22  ///

2

portion of the personnel files of Detective Roebuck, Officer
Taack, and Officer Everett within its possession.

     I declare under penalty of perjury, under the laws of the
United States of America, that the foregoing is true and correct.
Executed this 15th day of March 2010 in Riverside, California.

JERRY C. YANG
Assistant United States Attorney

EXHIBIT A

1  JAMES F. PENMAN, City Attorney (# 91761)
   DIANE C. ROTH, Sr. Assistant City Attorney (#96630)
2  300 North "D" Street
   San Bernardino, California 92418
3  Telephone: (909) 384-5355
   Facsimile: (909) 384-5238
4  e-mail: droth@sbcityattorney.org

5  Attorneys for Movant
   San Bernardino Police Department
6

7

                                    FILED
                          CLERK, U.S. DISTRICT COURT

                                JAN 13 2010

                          CENTRAL DISTRICT OF CALIFORNIA
                          EASTERN DIVISION      BY DEPUTY

8              UNITED STATES DISTRICT COURT

9                    CENTRAL DIVISION

10

11  UNITED STATES OF AMERICA,    )    CASE NO. CR 09-00081 RHW-1
                                 )
12                    Plaintiff, )    SAN BERNARDINO POLICE
                                 )    DEPARTMENT'S NOTICE OF
13       v.                      )    MOTION AND MOTION TO
                                 )    QUASH SUBPOENA DUCES
14  VINCENT YOUNG,               )    TECUM; MEMORANDUM OF
                                 )    POINTS AND AUTHORITIES
15                    Defendant, )
                                 )    Hearing:    January 25, 2010
16                               )    Time:       8:00 a.m.
                                 )    Courtroom:  1
17                               )    Judge:      Hon. Robert H. Whaley

18       TO DEFENDANT VINCENT YOUNG AND HIS ATTORNEY OF RECORD:

19       PLEASE TAKE NOTICE that on January 25, 1010, at 8:00 a.m., in Courtroom

20  1 of the above-referenced court, located at 3470 12th Street, Riverside, California, the

21  San Bernardino Police Department ("SBPD"), by and through the San Bernardino

22  City Attorney's Office, will respectfully move the Court to quash Defendant Vincent

23  Young's subpoena duces tecum seeking:

24       "Copies of any and all documents related to cases involving specialized
         units of the San Bernardino Police Department, and imbedded Federal
25       Agencies; including any material uncovered by Dr. William Schneid.
         Including a copy of Dr. Schneid's report of investigation into the San
26       Bernardino Police department's 'on ice' practices, Dr. Schneid's
         investigation to the department's Internal Affairs probe, and
27       investigation regarding missing 'buy' money for undercover
         investigations."
28

---

CR 09-00081 RHW                        1                    MOTION TO QUASH
                                                          SUBPOENA DUCES TECUM

1    The SBPD is not a party to this action, and moves to quash the subpoena under

2  the authority of Federal Rule of Criminal Procedure 17(c)(2) on the grounds that the

3  records sought by defendant are confidential, privileged, overly broad and irrelevant.

4  Accordingly, the SBPD requests that the court quash the subpoena duces tecum, or

5  in the alternative, conduct an *in camera* review of the materials sought, and issue a

6  protective order limiting the use of the privileged information.

7    This motion is based on this notice, the supporting memorandum of points and

8  authorities, the Declaration of Detective Steve Lyter, and other such matters and

9  argument as may properly come before the court.

10    This motion is made after conferring with counsel for defendant and after being

11  unable to reach a mutually agreeable solution on all issues.

12  Dated: January 13, 2010                    Respectfully submitted,

13                                             JAMES F. PENMAN
                                               San Bernardino City Attorney
14

15

16                                             DIANE CATRAN ROTH
                                               Senior Assistant City Attorney
17                                             Attorneys for Movant SBPD

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On or about March 26, 2009, Defendant Vincent Young was charged with felon in possession of ammunition.

On or about December 16, 2009, defendant served upon the San Bernardino Police Department ("SBPD") a subpoena duces tecum, a copy of which is attached hereto as Exhibit "1" and incorporated herein. The subpoena commands the SBPD to produce the following records:

> "Copies of any and all documents related to cases involving specialized units of the San Bernardino Police Department, and imbedded Federal Agencies; including any material uncovered by Dr. William Schneid. Including a copy of Dr. Schneid's report of investigation into the San Bernardino Police department's 'on ice' practices, Dr. Schneid's investigation to the department's Internal Affairs probe, and investigation regarding missing 'buy' money for undercover investigations."

After conferring by telephone and e-mail from approximately January 6 to January 11, defendant has narrowed his request to the time period of 1/2007 through 6/2009) and to "any finding or report that demonstrates that [the following] named officers have been involved in other cases using what is now known as 'on ice' practices": Officers Lawrence, Bealle, Bennet, White, Landeros, Flowers, Vega, Sgt. Wilson, and Detective Roebuck. A copy of defendant's revised requests is attached hereto and incorporated herein, as Exhibit "2." The documents under (b) are public records under the California Public Records Act and will be provided to defendant.

## FACTS

In the summer of 2008, there came to light an allegation that certain SBPD officers in the narcotics unit illegally held suspects "on ice" (without charges). SBPD's Internal Affairs Unit ("IA") conducted an extensive investigation into the allegations. In June, 2009, a new chief of Police was appointed. He retained Dr. William Schneid to do an independent review of the SBPD's internal investigation. The investigation and any reports contained therein contain the names of many

1   officers who were not involved in the arrest of this defendant. None of the officers
2   involved in the arrest of defendant were held accountable for the practice. The
3   investigation and reports are confidential personnel records of the involved officer(s).
4   One sergeant was placed on an extended leave during much of the investigation,
5   including the time when this defendant was arrested; he has not been assigned to the
6   narcotics unit (who arrested defendant) since August, 2008, was not in any way
7   involved in this defendant's arrest. The investigation is still pending.

8       Under Federal Rule of Criminal Procedure 17(c)(2), SBPD moves for an order
9   quashing the subpoena. SBPD is under a duty to oppose the defendant's efforts to
10  obtain privileged and confidential peace officer records pertaining to its officers. The
11  officers have constitutional privacy rights under both federal and state law preventing
12  disclosure. Both federal and state law require a showing of relevancy and good cause
13  before peace officer personnel records can be disclosed. SBPD contends that the
14  defendant has not met his burden and the subpoena should be quashed.

15      In the alternative, if the court finds that the defendant has met his burden,
16  SBPD respectfully requests the court to review the records *in camera* before
17  disclosure to determine whether the documents have clear relevance to the
18  prosecution of the criminal action or whether they contain information indicating that
19  these officers have acted in a capacity during the investigation and/or arrest that
20  would cause their files and background to be at issue in this matter. Additionally,
21  SBPD requests a protective order limiting the use of those documents to this litigation
22  and a requirement that defendant return the disclosed documents to the San
23  Bernardino City Attorney's Office when this case is concluded.

24                          **ARGUMENT**
25                              **I.**
26  **THIS COURT MAY QUASH THE CHALLENGED SUBPOENA**
27      Federal Rule of Criminal Procedure 17(c)(1) provides that a subpoena may
28  command the person to whom it is directed to produce the books, papers, docu-

1   ments or other objects designated therein.  Rule 17(c)(2) provides that the court on

2   "motion made promptly" may quash or modify the subpoena if compliance would

3   be unreasonable or oppressive.  The decision to quash or modify a subpoena duces

4   tecum on the grounds that compliance would be unreasonable or oppressive is left

5   to the trial judge's sound discretion and the decision will not be disturbed on

6   appeal unless it can be shown that the court acted arbitrarily and abused its

7   discretion or that its finding was without support in the record.  *In re Irving*, 600

8   F.2d 1027 (2d Cir. 1979), cert. denied 444 U.S. 866 (1979).

## II.

## THE BURDEN IS ON DEFENDANT TO SHOW
## GOOD CAUSE FOR COMPLIANCE WITH THE SUBPOENA

12        When a person objects to the production of documents by a motion to quash

13   the subpoena, the burden is on the party seeking production to show good cause

14   therefor. In addition, Rule 17(c) provides that a court may modify a subpoena if

15   compliance would be unreasonable or oppressive. Thus, the key in determining the

16   validity of a subpoena has been its 'reasonableness' and the courts have generally

17   adopted three criteria: (1) that the subpoena command only the production of

18   materials relevant to the investigation; (2) that the subpoena specify the materials

19   to be produced with reasonable particularity; and (3) that the subpoena command

20   production of materials covering only a reasonable period of time. *United States v.*

21   *Gurule*, 437 F.2d 239, 241 (10th Cir. 1970); *In Re Corrado Brothers, Inc.*, 367

22   F.Supp. 1126 (D.Del. 1973).

## III.

## DEFENDANT HAS FAILED TO MEET
## THE THRESHOLD SHOWING OF RELEVANCE

26        The issuance of a subpoena under Rule 17 is not a general discovery device

27   in criminal matters.  Rather, its purpose is to expedite the trial by providing a time

28   and place before trial to inspect the subpoenaed materials.  *U.S. v. Nixon*, 418 U.S.

1  683, 698-99 (1974).  In order to require production before trial, the requesting

2  party must show:  (1) that the documents are evidentiary and relevant; (2) that they

3  are not otherwise procurable reasonably in advance of trial by exercise of due

4  diligence; (3) that the party cannot properly prepare for trial without such

5  production and inspection in advance of trial and that the failure to obtain such

6  inspection may tend unreasonably to delay the trial; and (4) that the application is

7  made in good faith and not as a general fishing expedition. *Id.*  Essentially, the

8  defendant must demonstrate that the materials he seeks are (1) relevant; (2)

9  admissible; and (3) specific.

10      It is the defendant's burden to meet the necessary showing of relevancy and

11  admissibility.  Here, he requests records pertaining to Sgt. Lawrence, who was on

12  leave at the time of defendant's arrest and had not worked in the narcotics unit

13  since August 2008.  Det. Roebuck was also not involved in defendant's arrest.  At

14  the very least, the materials should relate to officers directly involved in defen-

15  dant's case, and the burden rests with defendant to show the officer's involvement.

16      Furthermore, the defendant has not shown that the investigation he seeks

17  relates to conduct relevant to his defense.  Citizen complaints regarding behaviors

18  not raised by the defense are not relevant and should not be disclosed. *Miller v.*

19  *Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992).  The investigation relates to

20  allegations that officers held suspects "on ice" (without charges) while they

21  attempted to develop cause for arrest. This case does not involve such conduct.

22      Assuming arguendo that the documents are requested for impeachment

23  purposes, such reason still does not automatically render these documents relevant

24  or admissible, especially given the nature of the requested documents.  "[N]ot

25  withstanding [defendant's] assertions to the contrary, documents are not

26  evidentiary for Rule 17(c) purposes if their use is limited to impeachment."

27  *United States of Am. v. Cherry*, 876 F. Supp. 547, 554 (S.D.N.Y. 1995).

28  ////

---

CR 09-00081 RHW                     6                    MOTION TO QUASH
                                                        SUBPOENA DUCES TECUM

## IV.

## THE SBPD HAS A DUTY TO KEEP THE

## SUBPOENAED INFORMATION CONFIDENTIAL

## UNDER BOTH FEDERAL AND STATE LAW

### A.    SBPD Should not Disclose Without a Court Order

The subject subpoena seeks police officers' personnel records.  These files are privileged and confidential.  As the custodian of privileged and confidential information (employee personnel files), SBPD has the right and duty to resist attempts at unauthorized disclosure and the person who is the subject of the information is entitled to expect that his rights will be asserted.  An uncontested and unwarranted disclosure of such information may expose the party who releases the information without a court order, to potential liability.  *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 696 (E.D. Cal. 1993) ; *Cook v. Yellow Freight Sys., Inc.* 132 F.R.D. 548, 551 n. 2. (E.D. Cal. 1990))  Therefore, both the officers *and* the SBPD have an interest in keeping the information confidential.

### B.    The Federal Information Privilege Prevents Disclosure

Federal common law recognizes a qualified privilege for official information.  *Kerr v. U.S. District Ct.*, 511 F.2d 192, 198 (9th Cir. 1975); *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1991) [Government personnel files are considered official information for purpose of the qualified discovery privilege for official information.].  "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto*, at 613.

As set forth in *Soto*, under the privilege, the SBPD must submit a declaration stating that:  (1) SBPD collected the material at issue and has maintained its confidentiality; (2) an SBPD official personally reviewed the

1   material in question; (3) SBPD specifically identified which privacy interests

2   would be threatened by disclosure to the defendant; (4) disclosure (even if subject

3   to a protective order) would create a substantial risk of harm to significant

4   governmental or privacy interests; and (5) future harm would occur to the officers

5   if disclosure were made. *Soto v. City of Concord, supra*, 162 F.R.D. at 613.

6        The declaration of SBPD Internal Affairs Division Investigator, Detective

7   Steve Lyter, proffers the necessary threshold showing.  SBPD collects information

8   in and keeps officer personnel files confidential and is mandated to do so.

9        First, the records sought contain complaints and names of other officers and

10  investigations which must be kept confidential.  Such complaints are acquired by

11  the SBPD in confidence from citizens and other officers who wish to express their

12  concern about an officer's conduct.  The confidentiality of investigating such

13  complaints is necessary to ensure the integrity and honesty of SBPD.  The most

14  effective means by which the SBPD can properly conduct this type of

15  investigation is to assure all persons supplying information of its confidentiality.

16  Thus, disclosure of such investigations could prevent citizens and officers from

17  coming forward with their complaints and would be contrary to the public interest.

18       Second, such records, including the one sought here, are investigations to

19  determine whether an officer has been involved in misconduct.  Even if the officer

20  is exonerated, the investigation materials remain as part of SBPD files.  During an

21  investigation, officers are obligated to testify truthfully and must provide

22  statements.  They have no right to refuse to answer and may be terminated if they

23  do so.  Therefore,  if such information is subject to dissemination beyond its

24  promised use, officers would not be as forthright, it would chill the ability of the

25  SBPD to obtain testimony and could impinge upon thoroughness, validity and

26  objectivity of the investigative reports. Furthermore, the dissemination of the

27  information could impact the officers' morale, particularly those officers who were

28  found to have no culpability.  Again, disclosure would be contrary to the public

---

CR 09-00081 RHW                                8                          MOTION TO QUASH
                                                                      SUBPOENA DUCES TECUM

1   interest.

2        Third, providing personnel record information could endanger the safety of

3   the officers.  Disclosure of personal information could expose the officer to

4   retribution.

5        Thus, this Court is required to balance the confidentiality of the officers'

6   personnel files with the adverse impact on the public interest if such information is

7   widely disseminated.

8        **C.     State Law Privileges**

9            **1.     Comity Necessitates Application of Federal and State Law**

10       At the outset, courts note that "in federal question cases the clear weight of

11   authority and logic supports reference to federal law on the issue of the existence

12   and scope of an asserted privilege." *Heathman v. U. S. Dist. Ct.*, 503 F.2d 1032,

13   1034 (9th Cir.1974); *Kerr v. U.S. Dist. Ct.*, 511 F.2d 192 (9th Cir.1975), aff'd, 426

14   U.S. 394 (1976).  Nonetheless, "as a matter of comity, federal courts should

15   attempt to ascertain what interests inspire relevant state doctrine and should take

16   into account the views of state authorities about the importance of those interests."

17   *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal.1987).

18       Though SBPD recognizes that state law is not controlling in this matter,

19   state law does offer support and further justification for SBPD's position.  Where

20   a state statute supports withholding privileged documents, federal courts should

21   consider that in determining whether to release the information in discovery.  *See,*

22   *e.g., Cook v. Yellow Freight System, Inc., supra*, 132 F.R.D. at 551, n. 2; *Pagano*

23   *v. Oroville Hospital, supra*, 145 F.R.D. at 696; *Martinez v. City of Stockton* 132

24   F.R.D. 677, 681-682 (E.D.Cal. 1990).

25            **2.   California Official Information Privilege**

26       California Evidence Code § 1040 provides additional authority against

27   disclosure.  Section 1040 provides for the official information privilege that

28   prohibits the disclosure of "information acquired in confidence by a public

1   employee in the course of his or her duty and not open, or officially disclosed, to

2   the public prior to the time the claim of privilege is made." Section 1040 (b)

3   states:

> A public entity has the privilege to refuse to disclose
> official information, . . . if the privilege is claimed by a
> person authorized by the public entity to do so and:
>
>  (1) Disclosure is forbidden by an act of the
> Congress of the United States or a statute of this state; or
>  (2) Disclosure of the information is against the
> public interest because there is a necessity for preserving
> the confidentiality of the information that outweighs the
> necessity for disclosure in the interest of justice; . . .

10   (Ca. Evid Code, § 1040(b).)

11       Subdivision (b)(2) provides for a conditional privilege of official

12   information of a public entity if the disclosure is against the public interest. To

13   determine whether the disclosure of the information is, in fact, against the public

14   interest, the Court must engage in a balancing process before the release of any

15   documents. *Shepherd v. Superior Court*, 17 Cal.3d 107, 128 (1976). This

16   "balancing" procedure is explained below:

> First, the court must ascertain, without respect to
> possible privilege, whether and to what extent the
> moving papers meet the requirements of specificity,
> materiality, and good cause as set forth in the applicable
> discovery statutes... [O]nly after a determination that a
> party is entitled to the information in the absence of a
> privilege must the court take the second step of an in
> camera inspection of the documents. At the in camera
> hearing, the court must determine whether the
> documents consist of "information acquired in
> confidence" and hence are subject to the official-
> information privilege as set forth in Evidence Code §
> 1040(a).

24   (2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed 1997) Official-

25   Information Privilege, §42.7, p.908.)

26       As the court will note, under state law the court should balance disclosure

27   versus the state's interest in keeping the records confidential. The reasons are the

1   same as those set forth above: (1) keeping citizen complaints utterly confidential

2   so as not to dissuade citizens from coming forward; (2) keeping internal

3   investigations confidential to promote forthright answers to questioning and to

4   promote morale; and (3) officer safety.  Therefore, SBPD again requests that this

5   Court, in light of the state statutory protections, quash the subpoena.

**V.**

**FEDERAL AND STATE PRIVACY RIGHTS**

**PREVENT DISCLOSURE**

9   **A.**    **Federal Privacy Rights**

10       Federal courts recognize a right to privacy that may be raised in response to

11   discovery requests.  (FRCP, Rule 26; *See also Seattle Times Co. v. Rhinehart* 467

12   U.S. 20, 34, 35 n.21 [Rule 26 authorizes trial court to protect from discovery the

13   privacy interests of litigants and third parties](1984); *Soto, supra,* 62 F.R.D. at 616

14   (constitutionally-based right to privacy can be raised in response to discovery

15   requests, either by objection or via seeking a protective order.)  For example,

16   courts have acknowledged limitations on discovery of personnel files on the basis

17   of public policy favoring the employees' privacy and candid performance

18   evaluations by the employer.  *See, e.g., Larson v. Harrington* 11 F.Supp.2d 1198,

19   1203 (E.D. Cal. 1998) [recognizing that disclosure of defendant's discipline

20   history may implicate legitimate concern about privacy]; *Miller v. Federal*

21   *Express Corp.* 186 F.R.D. 376, 384 (W.D.Tenn. 1999) [because of the privacy

22   interests, personnel records "should not be ordered produced except upon a

23   compelling showing of relevance"].

24       There is no doubt that the officers have an expectation and interest in

25   keeping portions of their personnel files private.  Additionally, as set forth in

26   detail above, the officers have federal common law privacy rights which the

27   government has a substantial interest in protecting.  *Seattle Times Co. v.*

28   *Rhinehart, supra,* at p. 36.    Therefore, SBPD requests that this Court consider

1    these interests in determining whether the defendant has made the necessary

2    showing to warrant disclosure.

3    **B.    California Privacy Rights**

4         **1.    California Constitution**

5         The officers have a legitimate expectation of privacy in these documents

6    under Article I, section 1 of the California Constitution:

7              All people are by nature free and independent and have
               inalienable rights. Among these are enjoying and
8              defending life and liberty, acquiring, possessing, and
               protecting property, and pursuing and obtaining safety,
9              happiness, and *privacy.*

10   (Cal. Const. art. I, § 1, emphasis added.)

11        "[A] 'reasonable' expectation of privacy is an objective entitlement founded

12   on broadly based and widely accepted community norms....[W]hen determining

13   the existence (or not) of a constitutionally protected claim we must weigh the

14   severity of each potential invasion of privacy." (*Ragge v. MCA/Universal Studios*,

15   165 F.R.D. 601, 604 (1995).)  The broad brush request for an investigation

16   covering many officers not involved in the defendant's arrest and officers

17   involved in defendant's arrest who were exonerated is too great an invasion of the

18   officers' privacy under the California Constitution.

19

20        **2.    California Evidence Code Sections 1043-1045 Regulate
               the Disclosure of Peace Officer Personnel Records**

21        Moreover, California peace officers have a legitimate expectation of privacy

22   based on specific statutory protections over their personnel files set forth in the

23   California Penal and Evidence Codes.

24        Under California state law, a party may compel discovery of peace officer

25   personnel records only "by demonstrating that the requested information will

26   facilitate the ascertainment of the facts and a fair trial." (*Pitchess v. Superior Ct.*,

27   11 Cal. 3d 531, 536 (1974).)  In 1978, the California Legislature codified the

28   privileges and procedures surrounding these *"Pitchess* motions" through the

---

1  enactment of California Penal Code §§ 832.7 and 832.8 and Evidence Code

2  sections 1043 and 1045. *See City of Santa Cruz v. Municipal Court (Kennedy)*, 49

3  Cal.3d 74, 81 (1989). Penal Code §§ 832.7 and 832.8 provide that peace officer

4  personnel records are confidential and subject to discovery only under the

5  procedures set forth in the Evidence Code. Evidence Code § 1043 requires,

6  among other things, a written motion describing the type of records sought, and

7  affidavits showing good cause for the discovery which set forth the materiality of

8  the records to the subject matter of the pending litigation. (Cal. Evid. Code § 1043

9  (a) & (b).)

10      Thus, only in limited circumstances and after a threshold showing of

11  specificity, materiality and good cause will the courts even allow these matters to

12  proceed in camera to review the privileged documents. Based on these extensive

13  statutory protections, SBPD and the officers have a legitimate expectation that

14  these records will remain confidential and will be protected from disclosure.

15                              **VI.**

16              **ANY DISCLOSED INFORMATION SHOULD**

17            **BE SUBJECT TO A PROTECTIVE ORDER**

18      Assuming arguendo that this Court finds that the personnel file may contain

19  some relevant information, SBPD requests the Court conduct an *in camera* review

20  of the documents. If any of the documents are found to be relevant, and the

21  interest in disclosure outweighs the constitutional interests of the officers, SBPD

22  requests a protective order such that the information may only be disclosed to

23  defense counsel, and directing that no other person be allowed to view the

24  documents. SBPD also requests that defense counsel be instructed that any

25  information contained in the disclosed documents be used only for the purposes of

26  this case, and at the conclusion of the case, all documents be returned to the San

27  Bernardino City Attorney's Office.

28  ////

1

## CONCLUSION

2    The SBPD's internal affairs investigations, are highly confidential.  They

3 are subject to both federal and state law official document privileges.  Furthermore,

4 the officers have expectations of privacy under both federal and state law.  The

5 subpoena is too broad in that it seeks files containing information about officers

6 who were not in any way involved in the arrest of this defendant.

7    There is an absolute bar to using a Federal Rule of Criminal Procedure 17

8 subpoena for impeachment purposes.  Rule 17(c) allows this court to quash the

9 subpoena upon a finding that it is oppressive and unreasonable.  Additionally, in

10 furtherance of comity, federal courts can recognize state law interests in protecting

11 such records.  State law requires the showing of good cause before divulging

12 peace officer personnel files.

13    Therefore, SBPD respectfully requests that this Court issue an order

14 quashing the subpoena.  In the alternative, SBPD requests an *in camera* review of

15 the records and a protective order limiting the dissemination of the confidential

16 files ordered disclosed by this Court.

17 Dated: January 13, 2010                    Respectfully submitted,

18

19                                           JAMES F. PENMAN
                                             San Bernardino City Attorney
20

21

22                                           DIANE CATRAN ROTH
                                             Senior Assistant City Attorney
23                                           Attorneys for Movant SBPD

24

25

26

27

28

**EXHIBIT "1"**

12/15/2009  18:03    19512756368              FPD RIVERSIDE                        PAGE  02/02

Attorney's Name, Address & Phone:
CHARLES C. BROWN (No. 179365)
Deputy Federal Public Defender
(Email: Charles_Brown@fd.org)
3801 University Ave., Ste. 150
Riverside, CA 92501
951-276-6346
951-276-6202 (facsimile)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| United States of America | |
|---|---|
| PLAINTIFF | CASE NUMBER |
| v. | ED CR 09-81-RHW |
| Vincent Young | |
| DEFENDANT(S) | SUBPOENA IN A CRIMINAL CASE |

TO: Dt. William Schneid - 310-663-0257; 760-771-9293 facsimile

☑ **YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the place, date and time specified below to testify in the above case.

Place: 3470 Twelfth St., Riverside, CA 92501 _____, Courtroom: 1

Date: January 25, 2020 _____, Time: 2:00 p.m.

☑ **YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):

Copies of any and all documents related to cases involving specialized units of the San Bernardino Police Department, and imbedded Federal Agencies; Including any material uncovered/investigated by Dr. William Schneid. Including a copy of Dr. Schneid's report of investigation into the San Bernardino Police Department's "on "ice" practices, Dr. Sohncid's investigation to the department's Internal Affairs probe, and investigation regarding missing "buy" money for undercover investigations.

_Terry Nafisi_
Terry Nafisi, Clerk of Court

12/15/2009
Date

EXHIBIT "B"

15

**EXHIBIT "2"**

**Diane C. Roth**

**From:**     Charles Brown [chasbro@sbcglobal.net]
**Sent:**     Thursday, January 07, 2010 3:28 PM
**To:**       Diane C. Roth
**Subject:**  Re: Young: Subpoena

Hi Diane,

Thanks for your response.  With resepect to number 2 in essence I am requesting any finding or report that demonstrates that those named officers have been involved in other cases using what is now know as "on ice" practices. I am aware of at least two such cases.

charles_brown@fd.org

On Jan 7, 2010, at 12:35 PM, "Diane C. Roth" <droth@sbcityattorney.org> wrote:

Charles --
As to #3, below, we will provide all of that documentation to you.  As to #2, we need some clarification.  After speaking with our IA officer, I'm not quite certain of exactly what you are asking for.  I should be in my office all afternoon today and all day tomorrow.  Please give me a call.

Diane Catran Roth
Senior Assistant City Attorney
San Bernardino City Attorney's Office
(909) 384-5355
droth@sbcityattorney.org


Confidentiality Notice

This e-mail transmission contains confidential information belonging to the sender which is legally privileged.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this e-mail information is strictly prohibited.  If you have received this e-mail in error, please immediately notify the sender by telephone to arrange for the return of the original document.


-----Original Message-----
From: Charles Brown [mailto:Charles_Brown@fd.org]
Sent: Wednesday, January 06, 2010 5:00 PM
To: Diane C. Roth
Cc: Rick Gentillalli
Subject: Young: Subpoena


Hi Dianne,

It was a pleasure speaking with you today.  As we discussed, I have no objection to narrowing the scope of our subpoena to the following:

1.   Time Period:

1/2007 through 6/2009.

2.   Scope:

We would limit our request to the findings of any internal investigation or report that involved any specialized narcotics units which involved Officers Lawrence, Bealle, Bennet, White, Landeros, Flowers, Vega, Sgt. Wilson, and Detective Roebuck.  We have learned from our investigation and discussions with Mr. Gary Smith that most of these officers have been associated with the now widely criticized "on ice" practice.

**EXHIBIT "2"**

16

3.    Embedded Units:

We are requesting information relating to any memorandum of understanding between the SBPD and Agents from the BATF with respect to narcotics and firearms investigations.  Specifically, we would like to know the chain of command/relationship between these units and the policy and practices for jointly conducted or referred investigations involving the BATF and SBPD.

Please let me know if you have any questions.  Thanks.

Charles C. Brown | Deputy Federal Public Defender
3801 University Avenue, Suite 150 | Riverside, California 92501
T: 951.276.6226| F: 951.276.6368 | charles_brown@fd.org

2

17

1

**PROOF OF SERVICE**

2 STATE OF CALIFORNIA                   COUNTY OF SAN BERNARDINO

3          I am employed in the County of San Bernardino, State of California.  I am

4 over the age of 18 and not a party to the within action; my business address is 300

5 No. "D" Street, Rm 668, San Bernardino, California.

6          On **January 13, 2010**, I served the foregoing document described as

7          **SAN BERNARDINO POLICE DEPARTMENT'S NOTICE**
           **OF MOTION AND MOTION TO QUASH SUBPOENA**
8          **DUCES TECUM; MEMORANDUM OF**
           **POINTS AND AUTHORITIES**
9
   on the persons set forth below as follows:
10

11 | | |
   |---|---|
12 | **Charles C. Brown** | **Daniel Ackerman** |
   | **Federal Public Defender's Office** | **United States Attorney's Office** |
   | **3801 University Ave., Ste. 150** | **3880 Lemon Street, Ste. 210** |
13 | **Riverside, CA 92501** | **Riverside, CA 92501** |

14

15   __X__   (BY MAIL) I enclosed the documents in a sealed envelope to the persons at
           the addresses above and placed the envelope for collection and mailing
16         following our ordinary practices.  I am readily familiar with this entity's
           practice for collecting and processing correspondence for mailing.  On the
17         same day that correspondence is placed for collection and mailing, it is
           deposited in the ordinary course of business with the United States Postal
18         Service, in a sealed envelope with postage fully prepaid.

19   ____   (BY PERSONAL SERVICE)  I caused such envelope to be delivered by
           hand to each of the above named persons at the above address.
20

21   ____   (BY FAX)  I caused the foregoing document to be FAXED to the parties
           listed above, FAX

22   ____   (STATE)  I declare under penalty of perjury under the laws of the State of
           California that the above is true and correct.
23

24   __X__   (FEDERAL)  I declare that I am employed in the office of a member of the
           bar of this court at whose direction the service was made.

25   Executed on **January 13, 2010**, at San Bernardino, California.

26

27   __JOSEFA SORIA__              _(signature)_
     (type or print name)

28

18

EXHIBIT B

1  JAMES F. PENMAN, City Attorney (# 91761)
   DIANE C. ROTH, Sr. Assistant City Attorney (#96630)
2  300 North "D" Street
   San Bernardino, California 92418
3  Telephone: (909) 384-5355
   Facsimile: (909) 384-5238
4  e-mail: droth@sbcityattorney.org

5  Attorneys for Movant
   San Bernardino Police Department

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,  )      CASE NO. CR 09-00081 RHW-1
                               )
12                Plaintiff,   )      ~~[PROPOSED]~~ PROTECTIVE
                               )      ORDER
13       v.                    )
                               )
14  VINCENT YOUNG,             )
                               )
15                Defendant,   )
    _____)

16

17       The motion for an order to quash defendant's subpoena duces tecum came on

18  regularly for hearing on January 25, 2010, in the above-entitled court. The defendant

19  was represented by Deputy Federal Public Defender Charles Brown. Movant San

20  Bernardino Police Department was represented by James F. Penman, San Bernardino

21  City Attorney, by Senior Assistant City Attorney Diane Catran Roth.

22       The Court, having considered oral and written argument presented, and the

23  pleadings and records on file herein, hereby issues the following Protective Order.

24       This Protective Order shall govern the use and disclosure of documents and/or

25  information ("Confidential Information") produced in accordance with the Court's

26  *in camera* review of documents and records in the case of *United States of America*

27  *v. Vincent Young*, Case No. CR 09-00071. The Confidential Information is disclosed

28  subject to the following Protective Order:

1.     Under no circumstances shall Confidential Information be used in any proceeding other than the instant case, including any retrial or appeal, or be disseminated, in any form, except by court order.

2.     Under no circumstances shall Confidential Information either orally, or by written form, be inputted into any computer program or database or listed manually in any manual, notebook or other listing as it pertains to law enforcement personnel. This does not apply to any computer program or case file maintained specifically as to this criminal action.

3.     Confidential Information shall not be copied or reproduced except to the extent such copying or reproduction is reasonably necessary to the conduct of this action. All such copies or reproductions shall be subject to the terms of this Order.

4.     Disclosure of Confidential Information shall be limited to the personnel and/or classification of persons listed below:

(a) Counsel for a party to this action;

(b) Staff personnel employed by counsel for any party;

(c) The court and its personnel, in connection with this litigation;

(d) Experts or consultants retained to work on this case by counsel for any party to this case; and

(e) Investigators retained by counsel for any party to this case.

5.     Defense counsel shall not provide to the defendant, either orally or in writing, the addresses and telephone numbers of persons identified within the Confidential Information, but may discuss the information obtained from any investigation conducted with complainants or witnesses.

6.     Counsel for any party to this action shall advise those individuals to whom disclosure of Confidential Information is to be made of the contents of this Protective Order and serve the individual with a copy of this Protective Order, and such counsel shall obtain the consent of such individual that he or she will be bound by this Protective Order. In the event such individual does not consent to be bound

1  by the Protective Order, no disclosure of Confidential Information will be made to

2  such individual.

3       7.     Any counsel, expert, consultant or investigator retained by counsel for

4  any party to this case shall not refer to Confidential Information in any other court

5  proceeding subject to further order of this court.

6       8.     All Confidential Information filed with the Court shall be under seal.

7       9.     Before any trial or other hearing at which Confidential Information may

8  be introduced into evidence or otherwise used, the Court shall be asked to issue an

9  order governing the use of such Confidential Information at trial or hearing.

10      10.    Except for documentation filed under seal by the court, all originals and

11  copies of Confidential Information shall be returned to the San Bernardino City

12  Attorney's Office by all persons in receipt of the Confidential Information within ten

13  (10) days after final termination of this case, whether such termination occurs by

14  settlement, judgment, dismissal, appeal or otherwise.

15      11.    This Protective Order, and the obligations of all persons thereunder,

16  including those relating to the disclosure and use of Confidential Information, shall

17  survive the final termination of this case, whether such termination is by settlement,

18  judgment, dismissal, appeal or otherwise, until further order of the court.

19      12.    Nothing in this Protective Order is intended to prevent authorized

20  individuals from having access to Confidential Information to which they would have

21  had access in the normal course of their duties.

22      13.    Any person found to have made an impermissible use of any

23  Confidential Information will be subject, without limitation, to civil and criminal

24  penalties for contempt of court.

25      IT IS SO ORDERED.

26  Dated: __2/4_____, 2010

27                          HON. ROBERT H. WHALEY, Judge
                             United States District Court

28

1

## PROOF OF SERVICE

2  **STATE OF CALIFORNIA**                    **COUNTY OF SAN BERNARDINO**

3           I am employed in the County of San Bernardino, State of California.  I am

4  over the age of 18 and not a party to the within action; my business address is 300

5  No. "D" Street, Rm 668, San Bernardino, California.

6           On **January 13, 2010,** I served the foregoing document described as

7                        **[PROPOSED] PROTECTIVE ORDER**

8  on the persons set forth below as follows:

9

| | |
|---|---|
| **Charles C. Brown**<br>**Federal Public Defender's Office**<br>**3801 University Ave., Ste. 150**<br>**Riverside, CA 92501** | **Daniel Ackerman**<br>**United States Attorney's Office**<br>**3880 Lemon Street, Ste. 210**<br>**Riverside, CA 92501** |

13  __X__   (BY MAIL) I enclosed the documents in a sealed envelope to the persons at
14          the addresses above and placed the envelope for collection and mailing
        following our ordinary practices.  I am readily familiar with this entity's
15          practice for collecting and processing correspondence for mailing.  On the
        same day that correspondence is placed for collection and mailing, it is
16          deposited in the ordinary course of business with the United States Postal
        Service, in a sealed envelope with postage fully prepaid.

17  ____    (BY PERSONAL SERVICE)  I caused such envelope to be delivered by
18          hand to each of the above named persons at the above address.

19  ____    (BY FAX)  I caused the foregoing document to be FAXED to the parties
        listed above, FAX
20
____    (STATE)  I declare under penalty of perjury under the laws of the State of
21          California that the above is true and correct.

22  __X__   (FEDERAL)  I declare that I am employed in the office of a member of the
        bar of this court at whose direction the service was made.
23
        Executed on **January 13, 2010,** at San Bernardino, California.
24

25      __JOSEFA SORIA__
        (type or print name)              (signature)
26

27

28

4