LARRY M. BAKMAN (SBN 88964)
1901 Avenue of the Stars
Suite 200
Los Angeles, California 90067
Telephone:  (310) 461-1555
Facsimile:  (310) 461-1556
Email:  lbakman@lbakmanlaw.com

Attorney for: Defendant

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>CALVIN COLBERT<br><br>Defendant | CASE NO:  CR -09-301-GW<br><br>DEFENDANT'S SUPPLEMENTAL BRIEF RE STANDING<br><br>**DATE: September 9, 2010**<br>**TIME: 11:00 A.M.**<br>**COURT:  HONORABLE**<br>**George H. Wu** |

Defendant, Calvin Colbert, by and through his attorney of record, Larry M. Bakman, hereby provides this Supplemental Brief re Standing as follows:

### INTRODUCTION

Defendant has filed a Motion to Suppress. The government now argues that defendant did not have Fourth Amendment standing to challenge the search because he lacked an expectation of privacy in Room 220.  It contends the registered occupant of room 220 was Jamine Marshall and that it was unclear

-1-

whether defendant was a guest in room 220.  It further contends that Room 220 was only used for the purposes of selling crack cocaine and thus defendant had a diminished expectation of privacy under *United States v Paopao*, 469 F.3d 760, 765 (9th Cir. 2006).  None of these contentions pass muster.

## FACTUAL BACKGROUND

On March 10, 2009 a confidential informant reported to San Bernardino Police officer Gerald Beall that a black male in his mid-to late 20's known as "Cal," was staying at the Economy Inn Motel in downtown San Bernardino and selling cocaine base in the form of crack cocaine.  Beall Aff., p. 2.

Based on what appeared to be a drug transaction occurring in the presence of undercover police, state officers obtained a search warrant signed by a judge of the San Bernardino County Superior Court for the premises located at the Economy Inn.  After obtaining the warrant, defendant transferred rooms, moving his belongings from room 217 into room 220.  After defendant's move was complete, staff cleaned room 217.  After confirming that room 217 was empty, agents executed the warrant only at room 220.  When they broke down the door, defendant was sitting in a chair in front of a desk containing stacks of money and baggies of crack cocaine.  *Ibid*.

**LEGAL ARGUMENT**

## I.  COLBERT HAD A PRIVACY INTEREST IN ROOM 220

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]"  *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998).   A person's reasonable expectation of privacy may differ based upon the location of the search.   See *United States v. Gonzalez*, 328 F.3d 543, 547 (9th Cir. 2003).  In *United  States v. Paopao*, 469 F.3d 760 (9th Cir. 2006) on which the Government relies, the court held that a lesser expectation of privacy exists in a commercial area than in a residential area.  *Id*. at 765 citing *Carter*, 525 U.S. at 90).  "Indeed, '[a]n individual whose presence on another's premises is purely commercial in nature . . . has no legitimate expectation of privacy in that location.' "  *Gonzalez*, 328 F.3d at p. 547 quoting *United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000)).

Unlike the situation in *United  States v. Paopao*, 469 F.3d 760, 764-65 (9th Cir. 2006) where the court found defendant lacked standing to challenge the search of an illegal gambling room because defendant did not own it and was present only for  the purposes of carrying out commercial or illegal activity--the Economy Inn is hardly a commercial establishment but a motel used for short-term residential purposes.  Further, another factor distinguishing this case from Paopao, is the fact

that defendant was not using room 220 for commercial purposes. Rather, all of the drug transactions that allegedly took place occurred on the sidewalk or in the parking lot. This is confirmed by Beall's confidential informant who described the person selling drugs out of room 220 as a male black named "Cal" who was *staying* at the Economy Inn" motel. (CR 35 at p. 32.)

Moreover, the undisputed evidence establishes that room 220 was being used as a residence, for residential, not commercial purposes. Defendant was a registered guest of the hotel and had been staying in room 217. After Officer Beall obtained a warrant, Beall returned to the Economy Inn and watched as defendant transferred his personal belongings from room 217 to room 220, thus evincing a change of room, not a change of residential status. The government's argument that that room 220 was being used for commercial purposes is based on facts not in the record.

As a further basis for distinction, the ruling in *Paopao* was based on the fact that defendant once possessed a gun but, by abandoning it, subsequently renounced any expectation of privacy in it. See *United States v. Veatch*, 674 F.2d 1217, 1220-22 (9th Cir.1981); *United States v. Anderson*, 663 F.2d 934, 937-39 (9th Cir.1981). Here, unlike Paopao, the gun was not abandoned, instead, when asked if there were any weapons, defendant admitted he had a gun and told the officers where it was located. (See CR 35 at p. 39.)

In *United States v. Bagley*, 772 F.2d 482, 490 (9th Cir. 185) the court held that the government could not argue the facts both ways in order to defeat an expectation of privacy.  See also, *United States v. Issacs*, 708 F.2d 1365, 1367-68 (9th Cir. 1984); citing *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).  The  Government here wants it both ways.  On the one hand, the government asserts that defendant's occupancy of the motel room and incriminatory statements about the gun establish his possessory interest in the weapon such that they should be used against him, but at the same time, it claims he lacks standing because he did not have a possessory interest in the motel room or its contents.  Its position assumes that the prosecution may charge possession but dispute an expectation of privacy regardless of the underlying facts.  Such prosecutorial self-contradiction should not be condoned. The government may not argue possession but deny an expectation of privacy where the circumstances of the case make such positions necessarily inconsistent.  The statements alone establish defendant's possessory interest in the gun, and therefore establish an expectation of privacy in the area searched.  Consequently, the distinction the government seeks to draw between an expectation of privacy in the space invaded and the items seized are untenable.

Nor does the fact that Jamine Marshall was the registered occupant of room 220 (see CR 35 at p. 70) in any way diminish defendant's expectation of privacy as

-5-

the Government maintains.  The Supreme Court has held an overnight guest has a reasonable expectation of privacy in a friend's residence even though he has no legal interest in the premises and does not have legal authority to determine who may enter the household.  *Minnesota v. Olson*, 495 U.S. 91, 96, 110 S. Ct. 1684, 1687 (1990) see also *United States v. Robertson*, 606 F.2d 853, 858 n.2 (9th Cir. 1979) (overnight guest had standing to assert fourth amendment violation in search of his possessions).  Accordingly, the Ninth Circuit has held that a defendant who moved a laboratory to his friend's house to avoid detection and then used that site to manufacture drugs had a legitimate expectation of privacy.  *United States v. Pollock*, 726 F.2d 1456, 1465 (9th Cir. 1984).  Similarly, a defendant who was an alleged co-owner of a storage unit and had allegedly paid a portion of the rental payments even though defendant's name did not appear on the rental agreement was held to have had a legitimate expectation of privacy in the place searched.  *United States v. Johns*, 851 F.2d 1131, 1135-36 (9th Cir. 1988).  Finally, in *United States v. Harwood*, 470 F.2d 322 (10th Cir. 1972), the court held that a defendant who stored containers in the attic of a friend's garage with the latter's permission to "come and go" to check the property had standing to challenge a search.  *Id*. at 325; see also W. Lafave, Search and Seizure § 11.3(c) at 303 (1987).

Defendant had a legitimate expectation of privacy in room 220.  As noted by Office Beall, defendant had a "pass key" to room 220 (see Affidavit in Support of

Warrant at p. 3, CR 35 at p. 33 and p. 44), and was free to come and go as he pleased. His belongings were stored there and even put away; Officer Landeros who was monitoring the location from his position of surveillance, watched defendant transfer his personal possessions from room 217 to 220, and the gun was in a drawer. (CR 35 at p. 42.) Further, the registration card for room 220 shows the room was occupied by two persons; Ms. Marshall and someone else. (CR 35 at p.70.) Based on the fact defendant had his own key, it would be reasonable to infer if not conclude that he was the second intended occupant. Thus at the least, defendant exercised partial or joint control over the premises. See *Johns*, 851 F.2d at 1136. Joint control "remains significant under the expectation of privacy standard." *United States v. Quinn*, 751 F.2d 980, 981 (9th Cir. 1984), cert.granted 474 U.S. 900 (1985), cert.dismissed, 475 U.S. 791 (1986). Finally, defendant took the precaution of storing his gun in a dresser drawer to assure privacy. (See CR 35 at p. 39.) These facts establish that defendant was an overnight guest. (*See United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991), and other similar cases, which held that the defendant had proven his status as an overnight guest).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

In view of the totality of the circumstances, defendant had a sufficient connection to Room 220 to assert the protection of the Fourth Amendment.

DATED:  August 19, 2010                    Respectfully submitted,


_____

LARRY M. BAKMAN

-8-