ANDRÉ BIROTTE JR.
United States Attorney
SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office
JERRY C. YANG
Assistant United States Attorney
California Bar Number 241323
Riverside Branch Office
     3880 Lemon Street, Suite 210
     Riverside, California 92501
     Telephone: (951) 276-6221
     Facsimile: (951) 276-6202
     E-mail: jerry.yang@usdoj.gov

Attorneys for UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 09-301-GW |
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL DECLARATION OF SAN BERNARDINO POLICE OFFICER GERALD BEALL RE MIRANDA ISSUE |
| v. | |
| CALVIN CHARLES COLBERT, JR., | |
| Defendant. | Hearing<br>Date: To Be Determined<br>Time: To Be Determined |

Plaintiff United States of America, by and through its attorney of record, Assistant United States Attorney Jerry C.

///

Yang, hereby submits the attached Supplemental Declaration of San Bernardino Officer Gerald Beall Re the Miranda Issue.

DATED: September 21, 2009

                                      Respectfully submitted,

                                      ANDRÉ BIROTTE JR.
United States Attorney

SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office

                                        /s/
JERRY C. YANG
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

**DECLARATION OF OFFICER GERALD BEALL**

I, Gerald Beall, being duly sworn, hereby depose and say as follows:

1.   I am a Narcotics Investigator for the San Bernardino Police Department and have been so employed since 2002. I am currently assigned to the Narcotics Unit of the San Bernardino Police Department.

2.   In this capacity I have participated in and executed hundreds of arrests for narcotics related offenses and participated in numerous narcotic related investigations for the sale of methamphetamine, cocaine, cocaine base, heroin, marijuana, ecstasy, and PCP.

3.   I have received formal training at the Riverside Sheriff's Academy in the recognition of narcotics, methods of manufacturing, packaging and illegal use of controlled substances, as well as methods in which narcotics are obtained, transported, and sold. In addition, I have received training in search warrants and clandestine laboratory safety with the San Bernardino Sheriff's Department.

4.   On March 11, 2009, I, along with several agents and officers from the San Bernardino Police Department and Bureau of Alcohol Tobacco and Firearms successfully negotiated an undercover purchase of crack cocaine from defendant Calvin Charles Colbert, Jr., who was inside a room at the Economy Inn. A few hours later, I obtained a search warrant signed by the Honorable Michael A. Smith of the San Bernardino County Superior Court to search Rooms 217 and 220 of the Economy Inn.

5.  The Economy Inn is located in an area in Downtown San Bernardino that is infested with crime and gangs.  This area has been particularly stricken with crime related to the use and distribution of narcotics.  When I was a patrol officer assigned to that area from 2002 to 2005, I responded to multiple calls for service regarding assault, robbery, shootings, stabbings, persons armed with guns/weapons, gunshots, etc., in that area.  Since I've been assigned to the Narcotics Unit from 2007 to current, I've conducted multiple narcotics investigations and arrests in the Downtown area- several of which occurred in the motels in that area.  In addition, there has been at least one officer-involved shooting in that area since 2006.

6.  Based on my training and 8 years' experience as a law enforcement officer, I have learned that many narcotics dealers will arm themselves with weapons, including but not limited to, knives and/or firearms.  These weapons are used to protect themselves as they conduct narcotics transactions. In addition, many times a suspect that I am arresting may have syringes, razor blades, knives, guns, and other items that could possibly injure me or the suspect while I'm searching his/her pockets.

6.  As set forth in the declaration I previously submitted in this matter, around noon on March 11, 2009, we began to execute the search warrant on Room 220.  Room 220 is a typical small, low-end motel room.  Attached as Exhibit A are photographs of Room 220 taken within minutes after the search warrant was executed.

7.  While defendant was on the ground, specifically, between the bed and the small table, as set forth in my

2

1 previously submitted declaration, I leaned over him, took him by
2 the arm, and asked him about the existence of any weapons.
3 Specifically, I asked him if he had any "guns, bombs, knives,
4 needles, or hand grenades, or anything that is going to poke me,
5 stick me, or stab me." This is the specific question that I pose
6 to every person that I am about to search so that I can minimize
7 the chance of injury to myself, other officers, and/or the
8 suspect.
9     8.   At this point, defendant had not been searched so he
10 still could have had a weapon hidden on his person.  In addition,
11 given the small size of the room, defendant was still in close
12 proximity and within arms' reach to many areas in the room in
13 which weapons could be hidden, such as underneath or inside the
14 bed, under or inside the nightstand, under the table, or under
15 the two chairs, or inside the dresser, etc.
16     9.   Moreover, although I had partial control of defendant
17 at that moment, based on my own experience and training, a
18 suspect in that position can and sometimes will nonetheless
19 resist arrest.  An ensuing struggle could quickly result in
20 defendant getting access to other parts of the room where weapons
21 could be kept and/or hidden.
22 ///

1  10. Based on all of the circumstances set forth above, I concluded that I needed to ask defendant about the existence of weapons both on his person and in the room.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this ____ day of September 2010 in San Bernardino, California.

                                              _____
                                              GERALD BEALL
                                              Police Officer
                                              San Bernardino Police Department

10. Based on all of the circumstances set forth above, I concluded that I needed to ask defendant about the existence of weapons both on his person and in the room.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 21st day of September 2010 in San Bernardino, California.

*[signature]*

GERALD BEALL
Police Officer
San Bernardino Police Department

4

EXHIBIT A

EXHIBIT A

