LARRY M. BAKMAN
1901 Avenue of the Stars
Suite 200
Los Angeles, California 90067
State Bar #088964
Telephone: (310) 461-1555
Facsimile:   (310) 461-1556
Email: lbakman@lbakmanlaw.com

Attorney for: Defendant

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>               Plaintiff,<br><br>  vs.<br><br>CALVIN COLBERT,<br><br>               Defendant | CASE NO: CR 09-301-GW<br><br>RESPONSE TO GOVERNMENT'S SUPPLEMENTAL BRIEFING RE: [1] STANDING AND [2] APPLICABILITY OF PUBLIC SAFETY EXCEPTION<br><br>DATE: October 21, 2010<br>TIME: 10:00 a.m.<br>CTRM: Honorable George H. Wu |

Defendant, Calvin Colbert, by and through his attorney of record, Larry M. Bakman, hereby submits his responsive brief to the supplemental briefing submitted by the government with respect to defendant's standing in connection with [1] his previously filed motion to quash and traverse the search warrant, and [2] with respect to his motion to suppress statements re: knowledge of the existence of a firearm at the location of his arrest.

**1.      Defendant has Established a Legitimate Expectation of Privacy as to Room 220 of the Economy Inn Located in San Bernardino.**

Contrary to the assertions of the government, and unlike the case of *United States v. Armenta*, 69 F.3d 304 upon which the government rests it argument, defendant has in fact

-1-

testified that he was in fact an overnight guest in Room 220 of the Economy Inn, having paid for said room in the presence of the Economy Inn's manager, having had a key to the room as observed by law enforcement, having had free access to go and go from the room as observed by law enforcement, and having personal items unpacked from defendant's luggage and placed in and about the room as observed by law enforcement after they made entry.

In *Armenta*, supra, the district court held after an evidentiary hearing to determine defendant's standing that defendant's evidence was insufficient to demonstrate that Armenta was, in fact, an "overnight guest" at the Clifford house; the court accordingly held that Armenta lacked standing to challenge the search of the house.

On Appeal the Circuit affirmed the lower court's ruling stating that Armenta's bald assertion that he was an overnight guest is not sufficient to establish that he had a legitimate expectation of privacy in the house. The circuit went on to state, that Armenta's statement without further proof was insufficient drawing a clear distinction between Armenta's situation from that of overnight guests such as those portrayed in *United States v. Davis*, 932 F.2d, 752, 756 (9th Cir. 1991) wherein the Circuit did find an expectation of privacy in that the guest had a key to the apartment, stored things there, and was free to come and go as he pleased. Further the guest had previously lived in the apartment and continued to pay a portion of the rent with an identifiable host being able to confirm such facts.

Despite the government's protestations, defendant's testimony remains un-controverted, in that he was a prior residence of the motel for two nights prior to his move into room 220, that he had a key to room 220, that he was observed by law enforcement using the key to room 220, that he was observed by law enforcement entering and exiting room 220, and that his personal belongings, including suitcases that appeared to be unpacked were present

in the room as were various items of toiletry goods that were present on top of the dresser cabinet. Most importantly, the monetary transaction for an overnight guest stay in room 220 took place in the presence of the motel manager and with the manager's permission. **Given the government resources demonstrated to date in this case, if in fact such testimony by defendant were false, the government could have easily interviewed the motel manager to determine if in fact he had a recollection of the event, given the door to room 220 was knocked down during the execution of the warrant, and then ascertain if the manager had a recollection of the transaction as described by Mr. Colbert.**

**The fact that the government remains silent on this issue by failing to present either a declaration or the manager, lends credibility to defendant's claim that he paid money in the presence of the manager and obtained status as an overnight guest as a result of this transaction.**

2. **The Public Safety Exception Vitiating the Necessity of a Miranda Admonition is Inapplicable in the Instant Case.**

Contrary to the assertions of the government, and unlike the case of *United States v. Reilly,* 224 F.3d 986 (9th Cir. 2000) upon which the government rests it argument, the facts of the instant case are quite different.

In *Reilly*, supra, an armed robbery suspect was being surveilled by law enforcement at a motel. During the surveillance, a female exited the target room and was confronted by police. Breaking away from police, she yelled to the room, "run Buddy". Immediately thereafter police broke down the door, entered the room and ordered the remaining male suspect to "get down" Prior to being handcuffed, as defendant was on the floor, he brought his arms to his front waistband. At this point the agent on scene who testified that he knew individuals commonly

secrete guns in their waistbands, and knew this individual was a suspect in "armed" bank robberies, told the suspect to reposition his arms and then asked "where is the gun".

Unlike the instant case, Reilly was asked about the gun before his person was secured, meaning he was asked before any handcuffs were placed on him or put another way, without any restraint.

As distinguished from the instant case, the Circuit analyzed the public safety exception in Reilly by stating as follows:

Reilly was not yet handcuffed and still had the capacity to reach and grab any nearby objects. Further, Agent Johnson asked the question only after Reilly started to bring his hands to his waistband, a place where weapons are frequently concealed. The officers had no idea whether Reilly was armed or not, and this suspicious move reasonably caused Agent Johnson to fear that Reilly might be reaching for a weapon.

Such facts are simply not present in the instant case. ***No furtive movements were observed by Beall prior to securing the defendant by both handcuffing defendant and placing his knee into defendant's back. Further, unlike Reilly, the officers had no specific information that defendant was armed. No such information was obtained either from the confidential informant or from observations made over the two days of law enforcement surveillance. Unlike the facts present in Reilly, Beall's questioning of defendant was unjustified absent a Miranda admonishment.***

Defense counsel can further address the arguments made by the government as to defendant's ability to pose a danger even after being handcuffed, face down on the floor but believes those arguments were adequately addressed in oral comment after the last hearing.

Counsel would however repeat his facetious reference that in considering the

-4-

government's argument, defendant must truly have been dangerous given the only mobile parts of his body were his feet and his toes, body parts that are surely commonly used by people for the acquisition and use of weapons. Alternatively perhaps the government simply believes all people have the toe dexterity exhibited by such actors as Daniel Day Lewis in "My Left Foot".

      Accordingly, defendant requests that the Court suppress in the instant case, both the questions and answers related to the firearm. Further defendant requests that the Court find that defendant has standing in which to challenge the underlying affidavit to the search warrant and continue on with the Franks Hearing and Motion to Quash and Traverse.

Dated: October 19, 2010                              Respectfully submitted,

                                                                                 _____
                                                                                 LARRY M. BAKMAN