LARRY M. BAKMAN (SBN 88964)
1901 Avenue of the Stars
Suite 200
Los Angeles, California 90067
Telephone:  (310) 461-1555
Facsimile:  (310) 461-1556
Email:  lbakman@lbakmanlaw.com

Attorney for: Defendant

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                              Plaintiff,<br><br>        vs.<br><br>CALVIN COLBERT,<br><br>                              Defendant | CASE NO:  CR 09-301-GW<br><br>DEFENDANT'S MOTION FOR NEW TRIAL [RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:      March 12, 2012<br>TIME:       8:00 a.m.<br>PLACE:    Courtroom of the<br>                 *Honorable George H. Wu* |

Defendant, Calvin Colbert, by and through his attorney of record, Larry M. Bakman, hereby moves the Court for a new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure. This motion is made on the ground that the interest of justice requires a new trial in that:

///

///

-1-

1.      The preclusion of evidence wherein defense counsel was precluded by the Court from calling the lead investigative officer in this case, Gerald Beall, deprived defendant of his constitutional right to present a defense;

2.      The denial of defendant's request to relieve his counsel deprived Mr. Colbert of the ability to adequately defend himself and thereby caused prejudice to the defendant;

3.      Pursuant to written request by the defendant filed on November 18, 2010, the Court's denial in instructing the jury as to the lesser of offense of possession of cocaine without an intent to distribute in violation of Title 21 U.S.C. 844, as well as the Court's denial of the mere presence instruction [Ninth Cir. 6.9] when contrasted with the evidence presented to the jury during trial resulted in a deprivation of defendant's constitutional right to a fair trial and his right to argue a valid defense.

This motion is based on the Memorandum of Points and Authorities in support of the Motion for New Trial, and upon such further matters as may be presented at the hearing on this motion.

DATED:      January 30, 2012                    Respectfully submitted,


                                                _____
                                                Larry M. Bakman
                                                Attorney for Defendant,
                                                Calvin Colbert

***MEMORANDUM OF POINTS AND AUTHORITIES***

1.

INTRODUCTION

On November 23, 2010, a jury convicted Calvin Colbert of Count 1 of the indictment alleging a violation of 21 U.S.C. section 824 (b)(1)(B)(iii), possession of base cocaine with intent to distribute. The jury further found that defendant possessed at least five grams or more for distribution. Defendant was also convicted of Count 2 of the indictment alleging a violation of 18 U.S.C. section 924 (c)(1), possession of a firearm in further of a drug trafficking crime.

Although Mr. Colbert was tried by jury, he was deprived of several significant constitutional rights. As more fully discussed below in the statement of facts relating to the instant case, the lead investigator in this matter was one Officer Gerald Beall of the San Bernardino Police Department. Mr. Beall had a history of misconduct and disciplinary action, the sum and substance of which was provided to the defense pre-trial pursuant to a defense "Henthorne" request.

Pursuant to a government motion in limine, filed on October 1, 2010, the Court tentatively ruled that Mr. Colbert would be precluded from calling Officer Beall in his case in chief, given the government's election not to call Officer Beall for fear that defense counsel would impeach the officer through the use of prior misconduct and disciplinary proceedings discovered through the use of a "Henthorne" request made by the defense pre-trial.

On November 18, by written request filed with the Court, the defense requested two separate proposed jury instructions. The first instruction requested that the Jury be instructed on the lesser included offense of mere possession of cocaine [without intent to distribute] in violation of 21 U.S.C. section 844. The second defense instruction requested was the Ninth

Circuit Model Jury instruction 6.9 entitled "Mere Presence". On November 19, 2010 the Court denied the defense request and refused to give either instruction.

Lastly, defendant in closed and sealed proceedings, held first on November 8, 2010 and again on November 19, 2010 outside the presence of the government, requested that the Court relieve counsel of record inasmuch as a conflict had developed between defendant and his counsel over defendant's desire to testify. Defense counsel indicated to the Court that he would be asking the defendant to testify in the narrative, given counsel's issues with the defendant's credibility. As such, defense counsel would be unable to effectively represent defendant through the use of a direct examination that fully explored and developed the defendant's desired testimony to be given before the trier of fact. Despite the under seal proceeding, the Court refused defendant's request to relieve counsel and to appoint new and different counsel of record. Accordingly defendant's right to the effective assistance of counsel pursuant to the Sixth Amendment was violated.

II

### STATEMENT OF THE CASE

On March 11, 2009, officers of the San Bernardino Police Department conducted an undercover narcotic investigation involving an individual allegedly selling crack cocaine from Room 217 of the Economy Inn motel located in San Bernardino.

Officer Beal was the lead investigator and case agent for the operation. The March 11, investigation was premised upon Beall's observations of a supposed drug transaction taking place at the Economy Inn a day earlier, on March 10, 2009, based upon information obtained from an informant. While Beall was present at the Economy Inn, he allegedly observed a suspect described as a male black, 5'10" tall conducting a hand-hand sale. The attempt to

conduct a controlled buy with Officer White on March 10th was unsuccessful as Beall upon his return to the Economy Inn with White, did not see the suspect despite waiting some two hours. The investigation apparently continued into the following day, March 11, 2009.

Among Beall's responsibilities on March 11, 2009 was leading the early morning briefing of officers as to the nature of the operation, the placement of officers in the field; the authoring of the search warrant ultimately used for the search of the motel room in question [Rooms 217 and 220]; the collection of evidence seized pursuant to the warrant; obtainment of defendant's alleged confession; and the writing of the police reports concerning all aspects of this case. Given the nature and extent of Beall's activities, defendant contends that the Court's rulings made throughout the trial in terms of limitations on defense ability to call/cross-examine or question other witnesses as to Officer Beall substantially prejudiced the defense case.

By comparison, federal law enforcement involvement was limited to a single ATF agent, one, Angie Kaighin, who was present during the service of the search warrant and who later obtained the narcotics and other evidence from Officer Beall such that the evidence could be booked into federal custody so as to be analyzed by the DEA crime laboratory. Kaighin wrote a two page synopsis premised upon Beall's 8 page crime report that detailed all aspects of the investigation.

During its case in chief, the prosecution called Officer White of the San Bernardino Police Department. White testified that he was able to purchase two rocks of crack of cocaine in a hand to hand sale conducted with a black female wearing a brown coat, later identified as Rosemary Wilkerson. White believed this female to be a runner for the defendant, despite never having personally observed contact between Ms. Wilkerson and the defendant, or having observed from where Ms. Wilkerson obtained the cocaine provided to Officer White.

In point of fact, the prosecution was unable to provide any witness testimony that defendant Calvin Colbert was the source of the cocaine ultimately provided by Wilkerson to Officer White.

Subsequent to White's purchase from Wilkerson, Officer White and Officer Beall drove back to the station so as to author an affidavit in order to obtain a search warrant for room 217 and 220 of the Economy Inn.

Unknown to White and to Beall, while enroute to the station, White's audio recorder was still active, capturing Beall's statement that he would "spew some shit" and that "as far as he was concerned, the black male on the second floor landing threw the cocaine at officer white" [contrary to what had actually transpired]. This second statement by Beall referenced an earlier attempt by Officer White to purchase crack cocaine from Kim Miles, a black female also believed by law enforcement to be a "runner" for defendant. This attempt was unsuccessful, however, during trial, the description provided by Officer White of the black male who spoke to Ms. Miles from the second story landing was grossly inconsistent with the actual height and weight of defendant, Calvin Colbert.

Beall thereafter obtained a state search warrant for the room 217 and 220 at the Economy Inn. Upon execution of the search warrant, defendant was located inside room 220 and was allegedly counting money at a table that had cocaine, a razor blade and a scale located thereon. A .22 caliber handgun was found in a dresser drawer inside the room. Defendant was arrested and later booked on possession for sale and possession with intent to distribute crack cocaine and possession of a firearm in furtherance of narcotic trafficking.

During pretrial proceedings defense discovery resulted in the disclosure of misconduct and disciplinary reports relating to Gerald Beall. Despite Beall being the lead investigator and

case agent and despite the fact that Beall allegedly obtained a full confession from the defendant as to the sales of crack cocaine, the government elected not to call Beall as a witness in their case in chief. Additionally, the government filed a motion in limine seeking to preclude the defense from calling Beall as a witness. On November 10, 2010 the Court after hearing argument from the government and defense counsel, tentatively granted the government's motion to preclude the defense from calling Officer Beall.

Trial in this matter commenced on November 16, 2010. On November 8, 2010 prior to the commencement of trial, and again during trial subsequent to the government resting, the Court at defendant's request conducted a closed hearing in which the defendant informed the Court that a conflict of interest had arisen between defendant and defense counsel wherein defendant requested that counsel be relieved. The conflict arose inasmuch as defendant insisted upon testifying on his own behalf, contra to counsel's advice. Further, defense counsel made clear to the Court at the second hearing in which defendant requested that counsel be relieved that defense counsel would be asking defendant to testify in the narrative given concerns defense counsel had with the defendant's credibility.[1]

Lastly, defense counsel on his client's behalf, requested that the Court instruct the jury as to the lesser included offense of mere possession of cocaine, in violation of title 21 U.S.C. 844. Defense counsel further requested that the Court instruct the jury as to Ninth Circuit Model Jury instruction 6.9 – mere presence. After hearing on the matters, the Court denied both defense requests.

///

///

---

[1] Defense counsel will seek the unsealing of the Court transcripts relating to defendant's request to relieve counsel for purposes of the Court's consideration of this Rule 33 motion.

III

***THE COURT SHOULD GRANT A NEW TRIAL***

***IN THE INTEREST OF JUSTICE***

Rule 33 of the Federal Rules of Criminal Procedure requires that a new trial be granted "if the interest of justice so requires. " This Court should grant a new trial for any or a combination of all the reasons set forth below.

**A.  Mr. Colbert Was Denied His Fifth and Sixth Amendment Rights to Present a Defense.**

1.  A defendant has a constitutional right to present a complete defense.

 "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294-295 (l973) As the United States Supreme Court has stated:

> "A persons right to reasonable notice of a charge against him, and an opportunity to be heard in his defense  - a right to his day in court – are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel. *In re Oliver*, 333 U.S. 257, 273 (1948)

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi*, *supra*, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."

Here the defense is not breaking new ground in observing that an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were, as in the instant case, permitted to exclude competent, reliable evidence, when such evidence is central to the defendant's claim of innocence. In the absence of any valid

state justification, exclusion of the lead investigator from being called as witness in the instant case, such that he could be cross examined as to the defendant's allegations of fabricated evidence, consistent with both his audio recorded statements unknowingly taped by Officer White, coupled with his past misconduct and disciplinary proceedings, is in effect exclusion of exculpatory evidence that deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing." *Crane v. Kentucky*, 476 U.S. 683, 690-691 (l986); see also *Holmes v South Carolina*, 547 U.S. 319, 324 (2006).

Taken as a whole, the Fifth and Sixth Amendments provide a criminal defendant the right to present a complete defense. Under the Due Process Clause, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system. *California v. Trombetta*, 467 U.S. 479, 485 (l984). The defendant's right to present a defense "would be an empty one if the prosecution were permitted to exclude competent, reliable evidence" that is vital or central to the claim of innocence. "in the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing. *Crane v. Kentucky*, 476 U.S. 683, 690-691 (l986).

In the instant case, the defense obtained through pre-trial litigation, a Court order

compelling production of "Henthorne" materials relevant to officer Gerald Beall and others. In the case of Gerald Beall, the City of San Bernardino produced documents that reflected that Beall had citizen complaints alleging misconduct and that he had suffered administrative discipline.[2] Additionally, Beall was found as a witness to be so incredible in a suppression hearing occurring before another federal bench officer within the Central District of California, Judge Robert H. Whaley sitting by assignment, such that the Court dismissed the government's case with prejudice.[3] Judge Whaley in a written opinion made specific adverse findings of fact against Officer Beall's credibility finding that he had not only lied, but violated the Constitutional rights of defendant in the matter entitled United States v. Young, Case No. ED 09-81-RHW.

Defendant claims in the instant case that Beall was a liar inasmuch as Beall, beginning on December 10th, had never seen defendant at the Economy Inn. Clearly the Jury should have been entitled to hear that Beall's description of defendant on March 10th was that the suspect was 5'10" tall, medium complexion and average build. [Search Warrant Affidavit pg. 2]. The jury should have also been afforded the opportunity to hear through examination by defense counsel of Beall that on March 10th the attempts at a controlled buy were unsuccessful and that neither Officer White nor Officer Beall, both present at the Economy Inn on March 10th were able to make an identification of, or a controlled buy from, defendant Calvin Colbert. Coupled with White and Landeros' description of the second story suspect on March 11, 2009 being some 5'8" tall may have clearly provided reasonable doubt necessary for the jurors to acquit the defendant of the allegations made against him by law enforcement on March 11,

---

[2] Given such documents were produced pursuant to a protective order, defense counsel will elaborate as to the specifics concerning Beall's documents such that they will not be disclosed in this pleading.

2009.

Defendant further claims that Beall fabricated evidence against him, and had admitted as much on tape, stating in reference to the search warrant affidavit that he would be "spewing some shit" and "that as far as he was concerned the person on the second story landing threw the cocaine at White".

Defendant further claims that Beall fabricated evidence of the defendant counting money upon making entry into the motel room, and that he had moved/planted evidence once inside the motel room for use in photographs and video ultimately played before the jury. Defendant's claims might all have been corroborated had the defense had the opportunity to either cross-examine Beall or call Beall as a witness in defendant's case in chief thereby confronting Beall with not only the inconsistencies in the instant case, but his past incidents of misconduct and fabrications made under oath. At minimum, the trier of fact should have been allowed to hear such evidence through defense examination of Officer Beall so as to be able to further judge the credibility of the defendant's testimony concerning police misconduct i.e., the staging of narcotic evidence such that the jury would be left only with the impression that defendant possessed such narcotics with the intent to distribute as opposed to any other person who had been present in Room 220, including Jamine Marshal, a convicted narcotics felon and habitual user of crack cocaine, who coincidently happened to be the registered guest who had signed for Room 220.

Given the Court's indicated ruling in this matter, defense counsel operated under the impression that he would be precluded from calling Officer Beall in the instant case so as to impeach his observations and testimony with or without extrinsic evidence of prior acts of

---

[3] No doubt these considerations led the government to the conclusion that they could not put on their lead investigator in their case in chief for fear that the jury, like Judge Robert H. Whaley, would find Officer Beall so

misconduct. The Court's indicated ruling was premised upon the government's October 1st

filing of a motion in limine seeking to preclude the defense from calling Officer Beall for any

purpose under the subterfuge that calling Beall would be called by the defense for

impeachment purposes only. The government contended in their motion as follows:

> "The government does not intend on calling Officer Beall to testify. Officer Beall cannot provide any relevant testimony in support of defendant's defense. He was across the street during the undercover purchase. Moreover, the transaction was video recorded and defendant can use that recording. Moreover, Officer Beall would be expected to testify consistently with his report.  As such, his testimony would not be helpful to the defense. The only purpose defendant would call him to testify would be to impeach him Accordingly, the government requests that the Court preclude defendant from calling Officer Beall for the purpose of impeaching him."

On November 2, 2010, the government supplemented their motion in limine seeking to

preclude the defense from calling Beall as a witness by attaching a copy of an amended order

sought by the government wherein Judge Whaley was asked to strike the adverse credibility

determinations made against Beall and instead replace intentional omissions/

misrepresentations made by Beall with a "watered down" explanation of that Beall's testimony

was the result of "poor preparation by government attorneys" as opposed to intentional

omissions and misrepresentations.

At an initial hearing held before the Court on November 4, 2010, the following colloquy

took place between the Court and counsel:

> THE COURT: Let me ask the government. If the defendant subpoenas Beall, on what basis would I preclude him from testifying?
>
> MR. YANG: Well, Your Honor, defense would have no reason that they, we believe, can proffer to subpoena Beall to testify other than for the simple fact of putting him on the stand so that they can impeach him basically, Your Honor, creating a sideshow on a witness that the government is not relying on.
>
> THE COURT: Well, but he is a percipient witness to the events that your witnesses are going to be testifying to. So, I mean, technically I can understand how you might object to

disingenuous and incredible that the government's case could not survive cross examination. .

certain questions that are asked of Officer Beall by defense counsel; but to preclude entirely Beall from being called as a witness, how would I do that?

MR. YANG: Well, Your Honor, I think the court, as a threshold matter, can ask defense counsel to proffer Officer Beall's testimony and how it's going to help defense in its case. Because I don't think they can say anything in there that's going to help -- they can't proffer any testimony of Officer Beall that's going to help defense other than for the fact that they're going to have him up there and they're going to find a way to impeach him and, therefore, be able to put up otherwise inadmissible evidence.

THE COURT: Let me ask Mr. Bakman. What's the purpose of calling Officer Beall as a witness?

MR. BAKMAN: Well, I can't give you each and -- the entirety of the purpose, Your Honor, until I hear the testimony of White and Landeros and then go back through the channel 7 transcript and the other recordings that we have in the case…"
with intent to distribute.

Subsequent to this colloquy the Court indicated that it would revisit the issue and render a

final ruling on November 8, 2010. On November 8, 2010 arguments on motions in limine were

pushed back to November 10, 2010. On November 10, 2010 the following colloquy took place:

THE COURT: I thought you already agreed with the court because the court made this clear is that I want Beall to be available, not necessarily that I will necessarily allow him to testify. But he's going to be available such that if I deem him to have some testimony that is relevant, that he will be available so that we don't have to stop the trial and try to locate him.

MR. YANG: Just to clarify, Your Honor. My understanding was that was for the suppression hearing, but nonetheless –

THE COURT: No, it's also for the trial. Your understanding is correct but at this point in time I expect him to be available. But conversely, however, I want the defense counsel to give you notice as to when he expects to want to call Beall.

MR. BAKMAN: He will be my first witness in my case-in-chief.

THE COURT: If he's allowed.

In later colloquy on the same date, the issue re-arose in relation to Officer Beall's

statements on Officer White's tape recording wherein Beall stated he would "spew some shit"

in relation to writing the search warrant affidavit. The colloquy is as follows:

MR. YANG: No. Basically, the tape will be played from when Officer White is on his way to the undercover buy and then it would end at the completion of the undercover buy when he walks across the street and meets up with Officer Beall; and at that point, the relevance ends.

THE COURT: Let me ask defense counsel. What would be the relevance of the latter portion of the tape then?

MR. BAKMAN: Well, the latter portion of the tape has Officer White and Beall talking about spewing out some shit. So it reflects directly on their credibility. Further, the latter portion of the tape has Officer White driving to the station with Beall talking into a tape recorder and coming up with a recitation of what occurred previously, and that is going to be a tremendous focus of cross-examination.

THE COURT: It's there. I understand the defense argument. I won't preclude the defense from making the argument. All right?

MR. BAKMAN: Thank you, Your Honor.

THE COURT: But conversely, however, I'm not going to allow you to justify calling Beall just for that.

Given the constraints expressed by the Court as to the defendant's ability to call Officer Beall as a witness in his case in chief, defense counsel chose not to call the officer, rather than risk constant and/or continued objections that the court made clear would be sustained. To do so, would have caused the defense to appear before the jury as if engaging in inappropriate conduct or behavior further prejudicing the defendant's case.

Despite never specifically prohibiting the calling of Officer Beall, the Court's "roadmap" was made unequivocally clear when during the cross-examination of the government's expert, Sgt. Travis Walker, the Court precluded defense counsel from obtaining an answer when asking the Sgt. how many times he had testified in his own case as the lead investigator vis-à-vis how many times his cases went to trial and he was not called by the prosecution to testify despite being the lead investigator. [R.T. pg. 273] This was particularly telling, given the fact that Walker had no direct involvement in the instant case, but was allowed by the Court to

-14-

testify over defense objection as an expert, opining on a multitude of topics including but not limited to 1. Narcotic and prostitution activities in the area of the Economy Inn; 2. Managerial acquiescence in allowing cocaine to be sold from hotel rooms in the area; 3. His history or rather lack thereof in requesting latent print analysis in cases he has handled; 4.The difference between cocaine base and powder cocaine; 5. The use of one dollar bills by narcotic purchasers in the San Bernardino area and the reasons therefore.

Further evidence of the Court's constraints upon the defense came to light when it appeared that when using policy and procedure to impeach, the defense was precluded from doing so, as contrasted to the prosecution's ability to elicit policy and procedure when to do so would assist in rehabilitation. For example, after evidence was presented that Officer White and Officer Beall provided Kim Miles, an alleged runner of the defendant who had approached Officer White to facilitate a crack cocaine purchase with a ten dollar bill provided to her by Officer White, knowing full well that she was desperate for crack and would use the money to purchase crack after having just asked White for one of the rocks he obtained from Rosemary Wilkerson, defense counsel asked Officer White whether such conduct was violative of department policy. The Court sustained the prosecutor's objection to the question. [RT pg. 133-134] In contrast, when issues were raised about the service of the search warrant, the prosecution was allowed to ask and obtain answers as to San Bernardino's policies and procedures. [R.T pg. 397]

The Court's evidentiary rulings provided a specific roadmap directing that defense counsel would be prohibited from calling Officer Beall and thereafter impeaching his credibility as to the contents of his reports, his observations and his conduct occurring on March 10, 2009 or March 11, 2009. Such was clear error given the facts brought out in trial established

that the defense would not be calling Beall for the sake of "subterfuge" or pretext to simply

impeach Beall as alleged by the prosecution in its motion in limine given that Beall was:

1.  The lead officer and case agent in this case responsible for writing the crime reports

[R.T. 83, 196]; responsible for recovering the dope seized pursuant to warrant; responsible for

recovering the money seized pursuant to warrant; Responsible for custody of the dope

between seizure and handoff to the ATF agent.

2.  Heard on tape as saying "I'm going to sling some shit" with regards to the writing of

the search warrant affidavit. [RT. 80-81]

3. Heard on tape as saying to Officer White, As far as I'm concerned he fucking threw it at

you from the second floor."  [RT pg. 80- 81; 85]  with White admitting under oath that this in

fact never occurred [No one from the second store landing threw anything down to Officer

White].

5.  Beall had on March 10th observed a target suspect described as a black male

operating out of the Economy Inn who was 5"8" tall, average build, always wearing a white

jacket, [Search Warrant Affidavit pg. 2] the importance of which is that this description is contra

to defendant who is 6'2" and 200 pounds and is contra to the description provided by Officer

White as to the person observed on the second floor landing speaking to Black Female No. 1,

Kim Miles, described by Officer White as being 5'8" in height.

The Court disallowed cross-examination of White as to Beall's March 10th observations as

reflected by the following examination concluding with a side bar colloquy:

Q    And Officer Beall, he quote, game plan so to speak for what was going to happen on
     March 11th; is that right?
A    That's correct.
Q    And Officer Beall conducted this because he had been out to the Economy Inn the
     day before; is that right?

-16-

MR. YANG: Objection, Your Honor; relevance.
THE COURT: Overruled. But let me have counsel on sidebar for just a moment.

THE COURT: Mr. Bakman, I'm not going to allow you to open the door so be careful when you do this.
MR. BAKMAN: I will.

[RT pg. 69-70]

This limitation by the Court further exacerbated defense efforts at impeachment concerning the inconsistencies relating to defendant's description given the following:

BY MR. BAKMAN:
Q    Did Beall indicate to you at the meeting that the person you were looking for always wears a white jacket?
A    I don't remember him saying that, no.
Q    Do you remember that he told you the person that you were looking for was 5'8" tall? A    I don't remember the description. The only thing I remember is his name.
Q    Did you write any notes down at the meeting?
A    No.

Defendant contends the Court's rulings and limitations as to questions concerning Beall or the actual calling of Beall was violative of his Constitutional and Statutory rights.

Federal Rules of Evidence 607 states as follows:

Any party, including the party that called the witness, may attack the witness's credibility.

Ninth Circuit Model Criminal Jury Instruction 1.7 states:

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:
(1)    the witness's opportunity and ability to see or hear or know the things testified to;
(2)    the witness's memory;
(3)    the witness's manner while testifying;
(4)    the witness's interest in the outcome of the case, if any;
(5)    the witness's bias or prejudice, if any;
(6)    whether other evidence contradicted the witness's testimony;
(7)    the reasonableness of the witness's testimony in light of all the evidence; and
(8)    any other factors that bear on believability.

Clearly the trier of fact should have been permitted to hear from Officer Beall. Clearly the defense should have been afforded the opportunity to call the Officer in their case in chief and permitted to question him as to his statements made on the tape recording concerning "slinging shit" fabricated evidence concerning defendant's conduct that never occurred [i.e. the throwing of narcotics from the second story landing] thereafter confronting him about his prior acts of misconduct and his omissions/misrepresentations made under oath before Judge Whaley.

Denial of this evidence entered into the defendant's decision to testify, thereby adversely affecting the outcome and impacting upon the jury's verdict. Had the Court allowed proper impeachment of Officer Beall, it is likely that defendant would not have testified and the resulting conflict of interest that arose between defendant and his counsel of record, would not have occurred.

**B. The Court Erred in Denying Mr. Colbert's Request to Relieve His Counsel**

1.  Relevant Facts:

Counsel of record, Larry M. Bakman was appointed to represent defendant on December 21, 2009 in place and stead of Sylvia Tores-Guillen who had been defendant's attorney since the inception of this case commencing March 12, 2009. As stated previously herein, on November 8, 2010 prior to the commencement of trial, and again during trial the Court at defendant's request conducted a closed hearing in which the defendant informed the Court that a conflict of interest had arisen between defendant and defense counsel wherein defendant requested that counsel be relieved and that a new attorney be appointed for the

defendant.[4] The conflict arose inasmuch as defendant insisted upon testifying on his own behalf, contra to counsel's advice. Further, defense counsel made clear to the Court at the second hearing in which defendant requested that counsel be relieved that defense counsel would be asking defendant to testify in the narrative given concerns defense counsel had with the defendant's credibility.

Given the breakdown in the attorney/client relationship, particularly with counsel's advisement that he would be questioning defendant in the narrative, Mr. Bakman should have been relieved, a mistrial should have been declared, and new counsel appointed for the defendant.

When determining whether the refusal to allow substitution of attorneys results in a denial of the right to effective assistance of counsel, the court must consider the following: (1) the timeliness of the motion to dismiss counsel; (2) the adequacy of the trial court inquiry into the defendant's complaint; and (3) whether the conflict between defendant and his counsel was so great that it resulted in a total lack of communication or a complete breakdown in communication preventing an adequate defense. See *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986). Although all of these factors should be examined, "a trial judge is required to order substitution of counsel if…it is demonstrated that there is a breakdown in the attorney-client relationship or that an actual conflict of interest existed." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). It is improper to deny a defendant's request to substitute counsel if a defendant alleges that the deficiencies of trial counsel prejudiced the defense. *U.S. v. Harrison-Philpot*, 978 F.2d 1520, 1527 (9th Cir. 1992).

In exercising its discretion with regard to a motion to substitute counsel, the court must

---

[4] Given the hearings were sealed and outside the presence of the government, the Court Reporter has yet to transcribe the proceedings as defense counsel has not made an application for the unsealing of the transcripts.

balance the defendant's Sixth Amendment right to counsel against the government's interest in prompt and efficient administration of justice. U.S. Const. Amend VI; *United States v. Gonzalez*, 113 F.3d 1026, 1028 (9th Cir. 1997). Even if trial is imminent, in the event a conflict exists between an attorney and his client, the court may grant the request for substitution of counsel. See *United States v. Williams*, 594 F.2d 1258, 1259-1260  (9th Cir 1979) (finding that the district court should have granted defendant's request to substitute counsel even though the conflict was brought to the Court's attention one month prior to trial and then only one week prior to trial). In Williams, the Ninth Circuit found that the client and attorney "were at serious odds" for some time. See id. Additionally, the *Williams* court found that there was a state of disagreement, bad relationship, and a lack of communication between the lawyer and his client. See id.

As in the *Williams* case, defendant herein advised the Court of a breakdown in the attorney client relationship prior to the time trial commenced. Serious problems had developed between Mr. Colbert and his attorney such that Mr. Colbert was not following the advice of counsel and chose to testify in direct contravention to counsel's advice.[5] The problem escalated when counsel advised the court that he would be having his client testify in the narrative. Clearly, the only inference is that defense counsel did not want to specifically question the defendant for fear of suborning perjury. Such statement to the Court should have immediately resulted in a mistrial such that new counsel could be appointed for the defendant thereby remedying the conflict of interest and insuring that the defendant's testimony would have been properly elicited and presented to the jury.

_____

Counsel will concurrently file such a request with the Court when filing this Rule 33 motion.
[5] The Court had to conduct a hearing outside the presence of the government concerning Agent Kaighin conversations with the prosecutors in regards to her overhearing an argument between defendant and his counsel concerning the decision of defendant to testify.

-20-

In continuing on with the case without substituting in new counsel, the relationship between defense counsel and his client became aggravated in that defendant alleged that defense counsel did not examine him as to areas he had wanted to cover with the jury. Defendant alleges that he was left to fend for himself and did so by making spontaneous utterances to the jury non-responsive to questions that were posed to him.

**C.  The Court Erred in Refusing to Instruct on Defense Proposed Instructions:**

1.  Relevant Facts:

On November 18, 2010 defense counsel filed a written request that the Court instruct Jury on Ninth Circuit Criminal Model Jury Instruction No. 3.15, that "defendant may be found guilty on the lesser included offense of simple possession in violation of Title 21 U.S.C. section 844"; and Instruction No. 6.10 stating that defendant's mere presence at the scene of a crime or mere knowledge that a crime is being committed is not sufficient to establish that the defendant committed the crime…"

2.  Argument:

For purposes of argument, defendant will address the Court's refusal in reverse order.

**A.    Refusal to give the mere presence instruction:**

Defendant would point out to the Court that it is important to note that the ***Mere Presence instruction has applicability to both Count 1 possession of cocaine base with the intent to distribute and Count 2, possession of a firearm in furtherance***. Assuming arguendo the Court does not believe the instruction is applicable to Count 1, there can be no argument based upon defendant's testimony as discussed below that the instruction was applicable and should have been given as to Count 2.

Failure of trial judge to instruct the jury on the theory of defense proposed by defendant

-21-

that is supported by law and has some foundation in evidence, constitutes reversible error. *Byrd v. Lewis*, 566 F.3d 855 (9th Cir. 2009); *Conde v. Henry*, 198 F.3d 734 (9th Cir. 1999). A defendant is entitled to an instruction on his theory of the case if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant. *U.S. v. Boulware*, 558 F.3d 971 (9th Cir. 2009).   Failure to instruct jury on defendant's theory of case, where there is evidence to support such instruction, is reversible per se and can never be considered harmless error; however, it is not reversible error to reject defendant's proposed instruction on his theory of case if other instructions, in their entirely, adequately cover that defense theory. *Duckett v. Godinez*, 67 F.3d 734 (9th Cir. 1995).

In the instant case defendant testified that he entered the room, having negotiated with Jamine Marshall and the motel management for a payment of $25.00 to cover the cost of a remote control lost by Mr. Marshall, thereby entitled defendant to stay in the Room 220 for an extra evening. [R.T. pg. 562-264] Defendant further testified that he did not see any cocaine in the room, and that the cocaine seized by law enforcement was not his. He testified in essence that he was merely present in the room and that he had was neither in possession of the cocaine nor had an intent to distribute the cocaine, nor was he in possession of the gun. [R.T. pg. 567]

As such, the Court was required to give the proposed Ninth Circuit instruction on mere presence inasmuch as no other jury instruction given, provided the jury with the defense theory of the case. As such the Court's refusal to give the mere presence instruction in this case denied defense counsel the ability to argue the instruction with the defendant's testimony, constituted reversible error per se and thereby prejudiced the defendant.

///

**B. Refusal to Instruct on Lesser Included Offense:**

The Court denied defendant's request for an instruction to the jury on the lesser included offense of mere possession in violation of Title 21 U.S.C. 844 rather than the charged offense of possession with intent to distribute in violation of Title 21 U.S.C. section 824. [R.T. pg. 527-230], premised upon the Court's finding that no rational juror could find on the basis of the evidence that the elements of the lesser [mere possession] are present. R.T. pg. 536.

"A defendant is entitled to a lesser included offense instruction when the elements of the lesser offense are a subset of the elements of the charged offense and a factual basis supports such an instruction." *United States v. Powell,* 932 F.2d 1337, 1341 (9th Cir.) (internal quotation marks omitted), *cert. denied,* 502 U.S. 891, 112 S.Ct. 256, 116 L.Ed.2d 210 (1991). Simple possession of a controlled substance is a lesser included offense with respect to possession with intent to distribute. *Id.* at 1341–42. To establish the required factual basis, the defendant must show that the jury could rationally find him guilty of the lesser offense while acquitting him of the greater. *Id.* at 1342. *U.S. v. Sitton,* 968 F.2d 947, 959 (9th Cir. 1992)

In the instant case, it is important to note that a conspiracy offense to distribute cocaine base was not charged by the government. Rather the government proceeded on a substantive theory against the defendant that he possessed cocaine base, in the form of crack cocaine, with the intent to distribute.

The Court ignored the fact that the room was registered to Jamine Marshall, an individual whom at trial was shown to have prior narcotic convictions and a drug habit. Clearly, the jury could have rationally found that the cocaine found inside the Room 220 at the time Officers made entry was in fact by possessed by the defendant, defendant being utilized as someone who was watching over the cocaine in Marshall's absence, yet not possessed for the purpose

of distribution. As such, the Court erred in refusing to instruct on the lesser included inasmuch as the instruction was supported by the evidence, a valid defense theory, and could be determined as such by a rational juror.

Conclusion:

For all of the above-stated reasons, defendant respectfully requests that the Court grant a new trial in this matter.

Dated: January 30, 2012                    Respectfully submitted,


                                           _____
                                           LARRY M. BAKMAN
                                           Attorney for Defendant, Calvin Colbert