# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 09-301-GW |
| | ) | |
| Plaintiff, | ) | **RULING ON MOTION FOR NEW** |
| | ) | **TRIAL** |
| v. | ) | |
| | ) | |
| CALVIN CHARLES COLBERT, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*United States v. Colbert*, Case No. CR-09-0301
Ruling on Motion for New Trial

## I. Introduction

Defendant Calvin Colbert ("Defendant") moves for a new trial in this action, which resulted in his November 23, 2010 conviction for violating 21 U.S.C. § 841(b)(1)(B)(iii) (possession of cocaine base with intent to distribute) and 18 U.S.C. § 924(c)(1) (possession of a firearm in furtherance of a drug trafficking crime).  Defendant raises three contentions which he believes entitle him to a new trial under Rule 33(a) of the Federal Rules of Criminal Procedure. *See* Docket No. 186.  Those contentions are: (1) the Court improperly precluded Defendant from calling at trial the lead investigative officer in this case (*i.e.* Gerald Beall); (2) the Court improperly denied Defendant's request to relieve his counsel (*i.e.* Larry M. Bakman); and (3) the Court improperly failed to give jury instructions as to (a) the (purported) lesser offense of possession of cocaine with an intent to distribute, and (b) "mere presence" as per the Ninth Circuit's Model Instruction No. 6.10.  The Government filed an Opposition and a Supplemental Opposition, the latter of which addresses sealed testimony that the Government did not have access to at the time it filed its initial Opposition. *See* Docket Nos. 192, 197.  Defendant did not file a Reply.

The Court elects to decide the Rule 33(b)(2) motion based on the submitted papers and its review of the record, and without a hearing or oral argument from counsel. *See United States v. Nace*, 561 F.2d 763, 772 (9ᵗʰ Cir. 1977); *United States v. Scott*, 521 F.2d 1188, 1195-96 (9ᵗʰ Cir. 1975).  For the reasons stated herein, the motion is DENIED.

## II. Analysis

### A. Jurisdiction

The Government initially argues that Defendant's motion was not timely filed (despite the Court's granting extensions), and such untimeliness creates a jurisdictional bar to any consideration of the motion.  The Court disagrees.

Rule 33(b)(2) requires that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence" to be filed "within 14 days after the verdict or finding of guilty." Fed. R. Crim P. 33(b)(2).  That time limit is not jurisdictional, however. *See Eberhart v. United States*, 546 U.S. 12 (2005); *see also Dolan v. United States*, 560 U.S. ___, 130 S.Ct.

2533, 2538 (2010) (citing *Eberhart* and noting that "we have found that certain deadlines are more ordinary 'claims-processing rules,' rules that do not limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court."). The Government argues that the time limit is jurisdictional, without referencing the Supreme Court's decision in *Eberhart. See* Docket No. 192 at 11:3-13:4. The most recent Ninth Circuit decision the Government cites in support of its position in that regard pre-dated *Eberhart* by some seven months.

Although the Rule 33(b)(2) time limit is not jurisdictional, it has nevertheless been characterized by the Supreme Court as being an "inflexible claim-processing rule." *See e.g. Eberhart*, 546 U.S. at 14. The jury verdict herein was rendered on November 23, 2010. Docket No. 151. On March 7, 2011, Defendant filed an ex parte application to continue the sentencing hearing which included the following representation: "The government and defense have been in negotiations concerning a waiver of defendant's right to file a Motion for New Trial as well as defendant's appellate remedies . . . ." Docket No. 154. The Government did not file any objection to that ex parte application nor did it indicate any disagreement with Defendant's representation as to the negotiations for Defendant to waive his right to file a Rule 33 motion. On May 3, 2011, Defendant filed another ex parte application delineating that (1) the parties had not reached an agreement to resolve the matter, (2) defense counsel needed additional time to have the trial transcript prepared and reviewed, and (3) asking for a continuance to the end of August. Docket No. 160. The Government did not oppose the ex parte application and did not raise any time bar to the filing of a Rule 33 motion. On October 25, 2011, the parties filed a Stipulation setting a briefing schedule for a Rule 33 motion with a hearing date of February 13, 2012. Docket No. 177. The Government therein indicated that the Stipulation was without prejudice to its challenging the Defendant's motion on the ground of untimeliness. On December 28, 2011, a similar Stipulation was filed continuing the hearing date to March 12, 2012.

The issue (of whether a Rule 33(b)(2) motion is untimely and whether that untimeliness should result in bar of its consideration) is to be decided by the district court in the exercise of its informed discretion. *United States v. Owen*, 559 F.3d 82, 84 (2d Cir. 2009). Here, the Court would not find the motion to be untimely; and that, even if it technically was, the lateness should not serve as a bar. Following the trial and jury verdict, the Government and the Defendant were

apparently attempting to reach an agreement which would avoid the need for litigating a motion for new trial. During that period, the Government did not raise untimeliness as an impediment to a Rule 33 motion. By the time the parties realized that a disposition could not be reached, Defendant continued to seek extensions, which this Court granted and the Government did not initially raise the issue of a time bar as to the motion. It was not until October 25, 2011, that the Government first indicated that it was reserving its ability to raise untimeliness as to the Rule 33 motion. However, by then, the Government had been aware of Defendant's intention of filing said motion for over eleven months. Moreover, the Government has not proffered any evidence of prejudice as a result of the continuances as to the filing of the Rule 33 motion.

Thus, the Court does not find that the Defendant is barred from making his Rule 33(b)(2) motion.

### B. Applicable Law as to Rule 33 Motions

Pursuant to Fed. R. Crim. P. 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Few reported Ninth Circuit cases have discussed this procedure. Secondary sources, however, flesh out the jurisprudence in the area. "The court has discretion in passing on the motion, but it should hold in mind the harmless and plain error provisions of Rule 52, and refuse to grant a new trial if the substantial rights of the defendant were not affected." Wright, King & Klein, <u>Federal Practice and Procedure: Criminal 3d</u> ("<u>Wright & King</u>") § 551, at 458; *see also United States v. McGuire*, 423 F.2d 1216, 1216 (9th Cir. 1970) ("A motion for a new trial lies entirely within the discretion of the trial judge."); Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)); *see also* <u>Wright & King</u> § 553, at 468 ("If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted."). A decision to grant a new trial is left for

exceptional cases. *See United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). Neverthe-less, "[a]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." Wright & King § 556, at 530. This can include the exclusion of evidence, admission of improper evidence, or erroneous jury instructions. *See id.* at 534, 536.

### C. Consideration of Defendant's Three Contentions

#### 1. Officer Beall

Defendant first argues that he was denied his Fifth and Sixth Amendment rights to present a complete defense because he was not allowed to examine Gerald Beall. In brief, the Government's opposition on this point initially highlights the fact that the Court never actually precluded Defendant from calling Beall as a witness, but simply expected that Defendant would make a proffer at trial after the Government's case in chief as to what proper, non-impeachment, purpose he would have for calling Beall as a witness. The Government's description of the situation is correct.

The Government filed a motion in limine to preclude the Defendant from calling Officer Beall at the trial. *See* Docket No. 105. At the October 6, 2010 hearing on Defendant's *Franks*[1] motion, the parties and the Court engaged in a discussion of that motion in limine. Docket No. 110 at pages 98-102. The Government argued that it would not be calling Beall in its case in chief and would be objecting to the Defendant's calling him simply to improperly attempt to impeach him. The Court never barred the defense from calling Officer Beall as a witness. It merely indicated that it would wait and see what the Government presented in its case in chief and then ask the defense to make an offer of proof as to what the defense planned to elicit from Officer Beall. As stated at the hearing:

> And as I said, it would obviously depend upon what the government presents by way of the case in chief because it might very well be that they are opening the door for some relevant testimony from Officer Beall. And I can't preclude that at this point in time because, again, he is a percipient witness.

*Id.* at page 101. Indeed, the Court recommended that the Government secure Beall's presence for the trial. *Id.* at page 102. While defense counsel contends that as a result of the Court's comments at the October 6, 2010 and November 10, 2010 hearings he believed that the Court

---

[1] Where a defendant makes a substantial showing that the information used to procure a search warrant was false, the defense can move to traverse the warrant which can lead to a hearing wherein the officer who provided the court warrant affidavit is questioned. *See Franks v. Delaware*, 438 U.S. 154 (1978).

was placing undue restrictions on what he would be allowed to ask Officer Beall at trial, defense counsel was clearly reading too much to those remarks. In fact, at the end of the November 10, 2010 hearing, the Court specifically *denied* without prejudice the Government's motion in limine to preclude the Defendant from calling Officer Beall as a witness. *See* Docket No. 132. Thus, at the trial, there was no order barring the Defendant from calling Beall as a witness or even limiting the scope of any questioning as to him. Further, the Court expected that if the Government were to raise any objection to specific questions asked that witness, there would have been a side-bar to discuss the matter outside of the hearing of the jurors where, if necessary, the defense would be allowed to make an offer of proof as to the challenged question or line of questioning. However, at the trial, the Defendant never attempted to call (or made a request to the Court to be allowed to call) Beall.

For the above stated reasons, Defendant's first argument as to Officer Beall does not warrant the granting of the Rule 33(b)(2) motion.

### 2. Defendant's Second Request to Substitute Counsel

Defendant asserts that he should have been allowed to replace his counsel because of a conflict concerning whether or not Defendant should testify at trial, arguing that this constituted a breakdown in the attorney-client relationship. In brief, the Government points out that the Court had already granted Defendant one motion to relieve his prior counsel, that the trial had already been continued multiple times, and that the instant request was made on the eve of and/or during trial. In addition, in its Supplemental Opposition, the Government takes the position that there really was no complete breakdown between Defendant and his counsel, just a disagreement over trial strategy.

This criminal action was initially filed on March 12, 2009. From March 26, 2009, Defendant was represented by the Federal Public Defender's Office. Between April 8, 2009 and December 15, 2009, Defendant was represented by Deputy FPD Sylvia Torres-Guillen. Docket Nos. 17 and 69. On December 14, 2009, while there were pending motions to suppress and for a *Franks* hearing, Defendant made an oral request for new counsel which the Court entertained outside of the presence of Government counsel. Docket No. 68. At that point, the trial had been continued five times at Defendant's request. Based on Defendant's assertions of a conflict of interest (on which the Federal Public Defender's Office took no position), the Court eventually granted Defendant's request. Docket Nos. 68 and 69. On December 21, 2009, Bakman was

5

appointed as CJA counsel, and the trial date was again continued. Docket No. 70.

 After further lengthy continuances at Defendant's request and upon a stipulation of the parties, on October 15, 2010, the Court set a trial date of November 9 with a final pre-trial conference of November 1. Docket No. 116. On November 8, 2009, the day before the scheduled trial, Defendant raised certain complaints as to the representation provided to him by Bakman. Docket No. 131. The Court held an inquiry outside the presence of Government counsel. Docket No. 196. After considering statements from both the Defendant and Bakman, the Court did not find a problem with Bakman's representation of the Defendant or a sufficient conflict to warrant appointment of new counsel, but did continue the trial for one additional week. *Id.*

 On Day 4 of the trial and outside of the presence of the jury, defense counsel brought to the Court's attention a problem that had arisen between the Defendant and himself in regards as to whether the Defendant should testify. *See* Trial Transcript, Day 4 – November 19, 2010 at pages 544 *et seq.*, Docket No. 195. After excusing Government counsel and clearing the courtroom, the Court allowed Defendant to delineate all of his complaints/assertions in regards to Bakman's performance and the existence/non-existence of any substantial conflicts between himself and his attorney. After considering those items, the Court concluded as follows:

> THE COURT: All right. Let me ask, Mr. Colbert. Do you have a specific request?
> THE DEFENDANT: Yes, I have a specific request. I would like a substitute counsel.
> THE COURT: I am not going to substitute counsel in this particular case because I do not find that Mr. Bakman has failed to provide you with adequate representation, and the fact that you disagree with his advice to you not to testify does not give rise to such a conflict.
> . . . .
> THE COURT: Let's stop, Mr. Colbert. I have known, and I think earlier there was discussions, that there has been a disagreement between yourself and Mr. Bakman as to whether or not you should testify or not. Even before the start of this trial there was that particular conflict. However, the presence of that conflict alone doesn't give rise to a situation where there's a basis established for me to substitute Mr. Bakman out as your attorney of record. He has continuously provided you with what I feel is certainly more than adequate representation in this regard.

*Id.* at 551-53.

6

As held in *United States v. Lindsey*, 634 F.3d 541, 554 (9ᵗʰ Cir. 2011), the trial court has discretion in deciding whether to grant a defendant's request for substitution of court appointed counsel. In exercising that discretion, three factors come into play: "(1) the timeliness of the motion; (2) the adequacy of the . . . inquiry into the defendant's complaint; and (3) whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense." *Id.*

Defendant's request for a substitution of counsel was not timely as it was made the day before the start of the trial, which had already been continued on multiple occasions at the Defendant's request. Furthermore, the Court had previously granted Defendant's request for a substitution of counsel approximately eleven months earlier. Additionally, the Court allowed Defendant to fully articulate the grounds on which he rested his request for new counsel, and considered those issues. Finally, the Defendant failed to establish either a breakdown in the attorney-client relationship or the existence of an actual conflict that would require new counsel. From the Court's observations and the statements of the Defendant and Bakman, there was no significant breakdown in the attorney-client relationship and indeed Defendant and his counsel were communicating with each other. While there were strong disagreements between them as to trial strategies, Bakman was not threatening to somehow sabotage the case if Defendant did not follow his advice. *Compare United States v. Adelzo-Gonzalez*, 268 F.3d 772, 779 (9ᵗʰ Cir. 2001) (defense counsel had used "bad" language and threatened to "sink" defendant for 105 years). As held in *United States v. Reyes-Bosque*, 596 F.3d 1017, 1034 (9ᵗʰ Cir. 2010), *cert. den.* 131 S.Ct. 898 (2011), "'[l]itigation tactics are decisions generally left to defense counsel,' and, without more, may not provide a sufficient basis for establishing conflict," quoting *United States v. Smith*, 282 F.3d 758, 763 (9ᵗʰ Cir. 2002). In this case as in *Reyes-Bosque*, the defendant was unhappy because he believed that his defense counsel was preventing him from testifying and refusing to call certain witnesses that defendant thought would help his case. *Id.* Where, despite those disagreements, counsel and defendant are still communicating with each other and jointly working to achieve the goal of presenting a viable defense (which the Court observed here), there is no basis for substituting a new attorney. This is especially the case where, as here, it is doubtful that a competent attorney could be found who would not take the same position as

Bakman did and strongly advise the Defendant not to testify at trial.[2]

### 3. Jury Instructions

Defendant contends that the Court committed two instructional errors by (1) not allowing a lesser-included "simple possession" instruction and (2) not allowing a "mere presence" instruction, the latter of which Defendant insists would have been germane to both of his convicted offenses, but particularly with respect to the conviction under 18 U.S.C. § 924(c)(1) – possession of a firearm in furtherance of a drug trafficking crime. Defendant believes that there was some evidence supporting both of these defenses, meaning that the Court was obligated to give the instructions. The Government emphasizes that there was insufficient evidence to support either a simple possession or mere presence defense theory, in contrast with considerable evidence supporting a finding of trafficking. In addition, with respect to the mere presence issue, it points out that the Court instructed the jury that the Government had to prove possession with an intent to deliver or transfer possession, meaning that the jury would have necessarily had to reject any concern that Defendant was "merely present" at the scene in order to find him guilty.

a) The Simple Possession Instruction

As stated in *United States v. Sitton*, 968 F.2d 947, 959 (9th Cir. 1992):

> "A defendant is entitled to a lesser included offense instruction when the elements of the lesser offense are a subset of the elements of the charged offense *and* a factual basis supports such an instruction." *United States v. Powell,* 932 F.2d 1337, 1341 (9th Cir.) (internal quotation marks omitted), *cert. denied,* 116 L. Ed. 2d 210, 112 S. Ct. 256 (1991). Simple possession of a controlled substance is a lesser included offense with respect to possession with intent to distribute. *Id.* at 1341-42. To establish the required factual basis, the defendant must show that the jury could rationally find him guilty of the lesser offense while acquitting him of the greater. *Id.* at 1342. [Emphasis added.]

The Ninth Circuit has observed that where the evidence at trial tends to establish distribution, the trial court is not required to give the simple possession instruction. *See e.g.*, *Sitton*, 968 F.2d at 959; *United States v. Powell*, 932 F.2d 1337, 1342 (9th Cir. 1991) ("Where there are large quantities of a drug and other evidence tending to establish distribution, we have declined to require a possession instruction, holding that once the jury found possession under such circumstances, it could not rationally conclude that there was no intent to distribute.").

---

[2] In fact, Defendant did testify at trial against his counsel's advice. The Court did not observe any failure of Bakman to represent the Defendant as best he could during that portion of the trial.

As correctly pointed out by the Government in its Opposition at page 25:

> The jury heard testimony and saw evidence that defendant was caught with, among other things, 21.31 grams of cocaine base in the form of crack cocaine consisting of 19 individually packaged pieces ready for sale; 35 pieces of unpackaged pieces, but consistent in size with $20 pieces; and two larger pieces in a separate plastic bag, as well as scales, empty baggies, pre-recorded currency, and loaded .22 caliber Ruger firearm. In addition, Officer White testified that he observed defendant on the landing negotiating the sale with the first female on behalf of Officer White. Officer Landeros also tracked that same male on the landing go into room 220, and kept eyes on that room until the other officers arrived with the search warrant and executed it.
>
> Perhaps just as significantly, as the Court noted before, there was no evidence of any personal use of crack cocaine found in room 220.

In light of that evidence, the Court was not required to give the simple possession jury instruction.

  b) The Mere Presence Instruction

The "mere presence" instruction is required to be given where the Government's case against a defendant is based primarily upon the defendant's presence at the scene of the crime. *See generally United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992). However, such instruction is not necessary if the Government's case is not solely based on the defendant's presence and the jury has been instructed on the other elements of the crime. *United States v. Tucker*, 641 F.3d 1110, 1123 (9th Cir. 2011).

Here, the Defendant has not argued (and the record below does not show) that the Court failed to give the jury the correct and complete instructions as to the crimes of possession of cocaine base with intent to distribute and possession of a firearm in furtherance of that crime (counts 1 and 2, respectively). Therefore, the relevant question here is whether the Government's case rested primarily and merely on the Defendant's presence at the scene of the crime. Clearly, it did not. As accurately summarized by the Government in its Opposition:

> [T]he jury heard testimony that defendant was on the motel landing negotiating a crack cocaine transaction with the female in the tracksuit. Officer White positively identified defendant as the person on that landing. Defendant directly rejected Officer White – only to shortly thereafter, send a woman in a brown jacket to sell crack cocaine to Officer White for a prerecorded $20 bill. Officer Landeros tracked the man come out [sic] onto the landing,

9

negotiate the sale, then return into room 220. Officers Landeros maintained eyes on him until the other officers returned and executed the search warrant. When the search warrant was executed, defendant was found inside the room in the middle of counting money. This money included the pre-recorded $20 bill, as well as a $10 pre-recorded bill that Officer White gave to the woman in the tracksuit (which Officer Ricardo Landeros subsequently observed throwing something to the man on the landing, i.e. defendant). Finally, when detained and asked about the presence of a weapon, defendant indicated that there was a weapon in the dresser. Officers and agents subsequently recovered a loaded Ruger .22 caliber semiautomatic firearm in that dresser.

Docket No. 192 at page 23. In light of the above, the failure to give the "mere presence"

instruction was not in error nor can it give rise to a grant of a new trial under Rule 33(b)(2).

## III. Conclusion

For the reasons stated herein, Defendant's motion for a new trial is DENIED.


Dated: This _13th_ day of March, 2012.


GEORGE H. WU
United States District Judge